STATE OF NORTH CAROLINA v. JAMES ELLIS LUTHER

No. 73

(Filed 1 July 1974)

1. **Homicide § 1— proximate cause**
   A person is criminally responsible for a homicide only if his act caused or directly contributed to the death.

2. **Homicide § 21— cause of death — necessity for expert medical testimony**
   The cause of death may be established in a homicide prosecution without the use of expert medical testimony where the facts in evidence are such that every person of average intelligence would know from his own experience or knowledge that the wound was mortal in character.

3. **Homicide § 21— cause of death — absence of expert medical testimony — sufficiency of evidence**
   The State's evidence in a homicide prosecution was sufficient to establish a causal relation between the victim's death and an assault which defendant made upon him with an iron pipe where it tended to show that the victim and defendant had an argument at the victim's home, that defendant told the victim not to come out into the yard or he would kill him, that the victim hit defendant on the arm with a rubber boot, that defendant hit the victim with an iron pipe with blows so forceful that they caused his eyes to bulge out of place in their sockets, and that the victim was not breathing seconds thereafter, since any person of average intelligence would know from his own experience or knowledge that the assault caused or directly contributed to the death; even if the victim's death came about as a result of the conjunction of heart disease with either the violence or the excitement and shock of defendant's assault, as defendant's medical evidence tended to show, it was still brought about by defendant's unlawful act, for the consequences of which defendant would be answerable.

Justice HIGGINS dissenting.

APPEAL by defendant under G.S. 7A-30(2) from the decision of the Court of Appeals finding no error in his trial before

State v. Luther

*Braswell, J.*, 13 August 1973 Session of the Superior Court of MOORE.

In a bill of indictment drawn under G.S. 15-144 the State charged that on 17 February 1973 defendant "did kill and murder Baxter McKenzie." When the case was called for trial the solicitor elected not to prosecute defendant for murder in the first degree but for "second degree or any lesser included offense."

The State's evidence tended to show:

Baxter McKenzie, a white male, was 58 years old on 17 February 1973. On that day he was at home in a weakened condition, recovering from influenza. He was employed as a printer at the Moore County News, where he had worked regularly every day. However, he had told his wife that he had heart trouble.

Mrs. Baxter McKenzie is defendant's stepdaughter. Mrs. McKenzie's mother, the wife of defendant, had come to the McKenzie home on Friday, 16 February 1973, and had stayed overnight in order to get some sleep. "Luther [defendant] had kept her awake." The two families lived about 200 yards from each other on the same road.

About 9:30 a.m. on 17 February 1973, defendant came to the McKenzie home. McKenzie was sitting in the front room drinking coffee. An argument ensued between the two men through the screen door, and McKenzie ordered defendant to leave so that Mrs. Luther could get some sleep. Hearing the argument Mrs. McKenzie came to the front door. At that time McKenzie was standing on the small front porch, and defendant was 10-12 feet out in the yard. The weather was very cold, and there was ice on the ground. A pair of rubber boots, which Mrs. McKenzie used to walk in the snow, and a length of iron pipe, which she used "to walk through the snow and ice," were on the porch.

Defendant told McKenzie not to come out into the yard or he would kill him. Mrs. McKenzie told her husband not to go into the yard, but he picked up one of her boots, "a big rubber boot you tie with big yellow stringer," and walked off the porch. Defendant had picked up the iron pipe from the porch and, at that time, he had it in his hand. McKenzie ran directly out to defendant and struck him on the arm with the boot one time. Defendant then hit McKenzie with the iron pipe. Defendant

"reared back on him three or four times and knocked his eyeballs out of his head. . . . His eyes had fell out of their place." After being struck with the pipe McKenzie fell to the ground. Defendant threw the pipe across the yard and walked up the road.

Mrs. McKenzie ran to her husband as soon as he fell. He made no sound, and he was not breathing. A neighbor who heard her screams helped her carry McKenzie into the house, "but he was already gone. He was not breathing at that time."

Deputy Sheriff Cockman arrived at the McKenzie home about 10:00 a.m. He found the body of McKenzie on the couch in the living room. There was no sign of life about him. "He appeared to be expired." At about 10:30 Cockman found defendant at his home. Defendant appeared normal except for the odor of alcohol on his breath and a small scratch on his right hand which was bleeding slightly.

Defendant's evidence consisted of the testimony of Dr. C. Harold Steffee, the pathologist who acts as medical examiner for Moore County. He performed an autopsy on McKenzie's body about 1:15 p.m. on the day of his death.

Dr. Steffee's testimony, summarized except when quoted, tended to show: He observed "a small amount of dried blood about [McKenzie's] face and a triangular laceration or cut immediately beneath the right eye, but feeling the bones underneath revealed no evidence of fracture of the underlying bone. There was another laceration or cut on the right thumb that was approximately a quarter to ⅜ inches deep, blood about this hand as well as on the left hand. . . . The most significant finding was a severe degree of hardening of the arteries of the heart. . . . There was no evidence of a recent clot in these arteries. . . . There was no evidence of bleeding inside the brain." In Dr. Steffee's opinion the cause of death was hardening of the arteries of the heart. On cross-examination Dr. Steffee said that in his final autopsy report he had said, "It is possible that the increased cardiac demand occasioned by an altercation might have precipitated death."

On rebuttal the State offered in evidence the two reports which, as medical examiner, Dr. Steffee had made on his investigation of McKenzie's death: Exhibit 4, made before the autopsy, and Exhibit 3, made afterwards.

Exhibit 4 showed the following entries:

"TYPE OF DEATH:
    Violent or Unnatural   Hit a pipe . . .

"FATAL WOUNDS
        Type: Blunt Trauma
        Size: 2x3 cum; Shape: stellate; Location:
            Below right eye; Plane line or direction:

"Probable cause of death: Cerebral hemorrhage
        Blunt trauma to head
Manner of death: Homicide"

Exhibit 3 was identical to Exhibit 4 except that on Exhibit 3 Dr. Steffee struck out "Hit a pipe" and listed the probable cause of death as "Coronary artery disease."

At the close of all the evidence the court denied defendant's "motion for a judgment as of nonsuit and directed verdict of not guilty."

The jury's verdict was "Guilty of murder in the second degree." From the judgment that defendant be imprisoned for the term of six years in the State's prison defendant appealed to the Court of Appeals. In a two-to-one decision, reported in 21 N.C. App. 13, 203 S.E. 2d 343 (1974), the Court of Appeals found no error in the trial, and defendant appealed to this Court as a matter of right.

*Attorney General Morgan and Associate Attorney Heidgerd for the State.*

*Seawell, Pollock, Fullenwider, Van Camp & Robbins for defendant appellant.*

SHARP, Justice.

Defendant's appeal presents one question: Considering all the evidence favorable to the State as true, is it sufficient to establish a causal relation between McKenzie's death and the assault which defendant made upon him with the iron pipe? G.S. 15-173, 15-173.1 (1973 Cum. Supp.).

[1]   A person is criminally responsible for a homicide only if his act caused or directly contributed to the death. 40 Am. Jur. 2d, Homicide §§ 13, 15 (1968); *State v. Horner*, 248 N.C. 342, 103 S.E. 2d 694 (1958). Defendant argues that his motion for

nonsuit should have been allowed because (1) the State did not offer any substantial evidence from either lay or expert witnesses tending to establish the cause of McKenzie's death; and (2) defendant's witness, Moore County's Medical Examiner, an expert pathologist, testified that his autopsy revealed no relation between defendant's assault and McKenzie's death and, in his opinion, the cause of death was hardening of the arteries.

[2]    The rule with reference to the necessity for expert medical testimony to show the cause of death in prosecutions for homicide was stated by Justice Ervin in *State v. Minton,* 234 N.C. 716, 721-22, 68 S.E. 2d 844, 848 (1951) : "The law is realistic when it fashions rules of evidence for use in the search for truth. The cause of death may be established in a prosecution for unlawful homicide without the use of expert medical testimony where the facts in evidence are such that every person of average intelligence would know from his own experience or knowledge that the wound was mortal in character. . . . There is no proper foundation, however, for a finding by the jury as to the cause of death without expert medical testimony where the cause of death is obscure and an average layman could have no well grounded opinion as to the cause. [Citations omitted.]" See *State v. Howard,* 274 N.C. 186, 162 S.E. 2d 495 (1968) ; *State v. Knight,* 247 N.C. 754, 102 S.E. 2d 259 (1958).

The State's evidence in this case is sufficient to support the following findings : Prior to his attack of influenza McKenzie had worked every day as a printer at the Moore County News. On 17 February 1973 he was at home, weak but recovering. Defendant came to his home but was not admitted. An argument ensued and McKenzie ordered defendant to leave. Defendant told him not to come out into the yard or he would kill him. Notwithstanding the threat, McKenzie walked off the porch and hit defendant on the arm with his wife's rubber boot. Whereupon defendant hit him with an iron pipe. He "reared back on him three or four times and knocked his eyeballs out of his head. . . . His eyes fell out of their place." The blows felled McKenzie to the ground. His wife, who saw it all, went to him instantly. He was not breathing. A neighbor who heard her screams came immediately, but McKenzie "was already gone."

[3]    In our view, from the foregoing facts, any person of average intelligence would know from his own experience or knowledge that the assault which defendant made upon McKenzie caused or directly contributed to his death. McKenzie was very

much alive before defendant felled him with blows from the iron pipe—blows so forceful that they not only struck him to the ground but also caused his eyes to bulge out of place in their sockets. Seconds thereafter McKenzie was not breathing. He had gone.

The fact that the autopsy revealed hardening of the arteries of the heart and no traumatic injury sufficient to cause death does not exonerate defendant. In his final autopsy report defendant's witness, Dr. Steffee, stated that "the increased cardiac demand occasioned by an altercation might have precipitated death." The law declares "that one who inflicts an injury on another and thereby accelerates his death shall be held criminally responsible therefor." 40 Am. Jur. 2d Homicide § 16 (1968). See also, 4 Strong, N. C. Index 2d, Homicide § 1 (1968).

Thus, if McKenzie's death came about as a result of the conjunction of his heart disease with either the violence or the excitement and shock of defendant's assault it was still brought about by defendant's unlawful act, for the consequences of which he would be answerable. Annot., 47 A.L.R. 2d 1072, 1077 (1956). The rule is well settled that the consequences of an assault which is the efficient cause of the death of another are not excused, nor is the criminal responsibility for causing death lessened, by the preexisting physical condition which made the person killed unable to withstand the shock of the assault and without which predisposed condition the blow would not have been fatal. 40 Am. Jur. 2d, Homicide § 20 (1968). See *State v. Knight, supra.*

From the evidence in this case it was permissible and reasonable for the jury to draw the inference that McKenzie would not have died but for defendant's unlawful assault and battery upon him. The motion for judgment of nonsuit was properly overruled.

The decision of the Court of Appeals is

Affirmed.

Justice HIGGINS dissenting.

The evidence is fairly stated in the opinion of the Court except in one particular. The death certificate filed by the physician quoted in the opinion was made on the basis of the doctor's preliminary examination and before the autopsy.

Fairly construed, the evidence shows the deceased advanced to the attack and struck the first blow. True, the State's witness stated the blow struck by the defendant with the pipe "knocked his eyeballs out of his head." The autopsy examination failed to disclose any injuries to the eyes, skull or brain and that death resulted from hardening of the arteries.

The poor old woman testified: "My husband (deceased) jumped up and grabbed a rubber boot and ran outside. He hit Ellis Luther on the arm with that boot and then fell to the ground . . ." After identifying the piece of pipe the defendant used, the witness said "There are a million down there (the yard where the trouble occurred) just like it. . . . Prior to being struck . . . Baxter previously was sick with flu and he was weak. He had heart trouble."

The State's evidence, in my opinion, was insufficient to go to the jury and sustain a finding that death resulted as a result of the defendant's wrongful act. The case of *State v. Horner,* 248 N.C. 342, tends to support the court's decision in this case. In Horner, I thought at the time it was heard that the evidence was insufficient to support a finding of death by a wrongful act. For that reason I dissented and for the same reason I dissent now.