STATE OF NORTH CAROLINA v. JOHN W. CUMMINGS AND WILLIE MAE RAY CUMMINGS

No. 54

(Filed 4 November 1980)

**1. Homicide § 30.3– involuntary manslaughter – assault as one proximate cause of death**

The State's evidence was sufficient to show that assault by defendants was one of the proximate causes of the victim's death and to support defendants' conviction of involuntary manslaughter where it tended to show that the immediate cause of the victim's death was obstruction of the airway system of the lungs by vomitus which he had inhaled into the lungs; the victim was highly intoxicated at the time defendants assaulted him and his intoxication affected his ability to expel vomitus from his mouth; his gag reflexes were greatly inhibited, if not inoperative, by reason of his intoxication, and he was more likely to become strangled by the inhalation of his

vomitus when lying on his back in a supine position; prior to the assault by defendants, the victim was in an upright position, able to run and move about freely, and was not vomiting before being struck in the stomach and on the head by defendants; when defendants struck him with a board and broken bottle about the head and body, knocking him to the sidewalk, the victim then lay flat on his back in an unconscious position; defendants made no effort to aid him but left the scene; and when an officer arrived shortly thereafter, the victim was still on his back and was taking his last dying breaths.

2. **Homicide § 27.2– instructions – involuntary manslaughter – unlawful act – criminal negligence – no expression of opinion**

The trial court's definitions of "an unlawful act" and "criminal negligence" and its application of those definitions to the offense of involuntary manslaughter did not amount to an expression of opinion on the evidence or invade the province of the jury.

Justice BROCK did not participate in the consideration or decision of this case.

DEFENDANTS appeal from decision of the Court of Appeals, 46 N.C. App. 680, 265 S.E. 2d 923 (1980), upholding judgment of *Braswell, J.*, at the 9 July 1979 Criminal Session, CUMBERLAND Superior Court.

Defendants were charged in separate bills of indictment, proper in form, with voluntary manslaughter in violation of G.S. 14-18.

The State's evidence tends to show that on 17 September 1978, defendants were chasing one Oscar M. Melvin. Melvin was running backwards with his hands up in the air, and defendant John Cummings had a thick board in his hand and was striking at Melvin with it. At the same time, Willie Mae Ray Cummings was carrying a broken bottle and striking at Melvin with it. John Cummings swung the board and struck Melvin in the stomach; Willie Mae tried to stab him. As Melvin fell forward after being struck in the stomach, John Cummings hit him with the board again and Melvin spun around, falling to the sidewalk. Other people came by the scene carrying sticks but did not strike Melvin. In a few seconds, they all ran away, leaving Melvin flat on his back on the sidewalk. He was found in that position when the officers arrived. A small puddle of blood was around his head. Melvin took a few gasping breaths and died.

Dr. Leach, an expert pathologist, performed an autopsy on 18 September 1978 on Melvin whom he found to be a middle-

aged man, five feet eight inches tall and weighing 180 pounds. A number of wounds were found on his body including a cross-shaped laceration of the skull four inches above the left eyebrow, a deep cut to the bone on his left chin, a cut in the lower neck above the breastbone, a shallow cut below his left collarbone and numerous scratches. Internally, Melvin's lungs were congested and the air passage and bronchial system were filled with material identical to that later found in Melvin's stomach. This indicated to Dr. Leach that the victim had sucked this material into his lungs. In the doctor's opinion, the immediate cause of death was obstruction of Melvin's airway by vomit which he had sucked into the airway system of his lungs. He drowned because of this obstruction.

Dr. Leach found that Melvin had a blood alcohol content of .35 percent, which would cause a person to be unconscious. The high blood alcohol content would affect his gag reflexes and would have caused him to suck vomit into his throat. This is more common when a person is lying in a prone position on his back.

No knife or other weapon was found on Melvin or near his body. The officers found at that spot only a broken one by four piece of lumber.

Defendants testified in their own behalf and offered other evidence which tends to show the following. Defendants and others were at "Rick's house" and all were drinking wine. Willie Mae Cummings was at the piano with a glass of wine when Oscar Melvin made some sexual comments to her. Melvin went to the bathroom, returned and again made sexual remarks to Willie Mae. Willie Mae then went to the front porch and told Rick what had happened. Defendant John Cummings took up the argument with Melvin. Melvin had a knife in his hand and was threatening to cut John so John got a board to defend himself. He and Melvin chased each other around the yard, John with the board and Melvin with a knife. Meanwhile, Willie Mae picked up a piece of broken bottle. The running and chasing eventually led them to Horne's Grocery where defendant John Cummings hit Melvin with the board, Willie Mae swung at him with the bottle and Melvin went down. Both defendants then left and returned to "Rick's house."

The jury convicted each defendant of involuntary manslaughter and each was sentenced to five years in prison. Both defendants appealed, and the Court of Appeals found no error, with Judge Clark dissenting. Defendants thereupon appealed to the Supreme Court as of right pursuant to G.S. 7A-30(2), assigning errors discussed in the opinion.

*Rufus L. Edmisten, Attorney General, by James L. Stuart, Assistant Attorney General, for the State.*

*James R. Parish, Assistant Public Defender, for defendant appellants.*

HUSKINS, Justice.

Failure of the court to nonsuit constitutes each defendant's first assignment of error.

A motion to nonsuit requires the trial court to consider the evidence in its light most favorable to the State, take it as true and give the State the benefit of every reasonable inference to be drawn therefrom. *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469 (1968). Whether the evidence is direct, circumstantial, or both, if there is evidence from which a jury could find that the offense charged has been committed and that defendant committed it, the motion to nonsuit should be overruled. *State v. Haywood,* 295 N.C. 709, 249 S.E. 2d 429 (1978); *State v. McKinney,* 288 N.C. 113, 215 S.E. 2d 578 (1975).

Defendants' motions for nonsuit are grounded upon the contention that the evidence is insufficient to establish a causal relation between the victim's death and the assaults allegedly made upon him by defendants. It is argued, therefore, that the motions for nonsuit should have been allowed. For reasons which follow, we hold defendants' position is unsound.

To warrant a conviction in this case, the State must establish that the acts of the defendants were a proximate cause of the death. "[T]he act of the accused need not be the immediate cause of death. He is legally accountable if the direct cause is the natural result of the criminal act." *State v. Minton,* 234 N.C. 716, 722, 68 S.E. 2d 844, 848 (1952); *State v. Everett,* 194 N.C. 442, 140 S.E. 22 (1927). There may be more than one proximate cause and criminal responsibility arises when the act complained of caused or directly contributed to the death. *State v. Luther,* 285

N.C. 570, 206 S.E. 2d 238 (1974); *State v. Horner*, 248 N.C. 342, 103 S.E. 2d 694 (1958).

[1] When the State's evidence in this case is tested by the foregoing rules, it suffices to show beyond a reasonable doubt that one of the proximate causes of the death of Oscar Melvin is attributable to the assaults made upon him by defendants. The State's evidence is sufficient to support the following findings: The victim Oscar Melvin was highly intoxicated at the time defendants assaulted him and his intoxication affected his ability to expel vomitus from his mouth; his gag reflexes were greatly inhibited, if not inoperative, by reason of his intoxication; and he was more likely to become strangled by the inhalation of his vomit when lying on his back in a prone position. The jury could further find from the State's evidence that prior to the assault by defendants, the victim was in an upright position, able to run and move about freely, and was not vomiting prior to being struck in the stomach and on the head by defendants. When defendants struck him with a board and a broken bottle about the head and body, knocking him to the sidewalk, the victim then lay flat on his back in an unconscious condition. Defendants made no effort to aid him but left the scene and returned to "Rick's house." Shortly thereafter, when Officer Burgess arrived, Melvin was still on his back, his eyes glassed over, taking his last dying breaths. These permissible findings are supported by the evidence. It necessarily follows, therefore, that the evidence was sufficient to carry to the jury the question whether the wounds inflicted upon the deceased by the defendants were a proximate cause of the victim's death. This is true because the acts of the defendants need not be the immediate cause of the death. They are legally accountable if the immediate cause of death is the natural result of their criminal acts. *State v. Knight*, 247 N.C. 754, 102 S.E. 2d 259 (1958); *State v. Minton, supra. Compare State v. Hargett*, 255 N.C. 412, 121 S.E. 2d 589 (1961); in which the evidence is markedly analogous to the evidence before us in this case.

We hold the evidence is sufficient under the laws of North Carolina for a rational jury to find defendants guilty of involuntary manslaughter beyond a reasonable doubt. *Compare State v. Jones*, 290 N.C. 292, 225 S.E. 2d 549 (1976), in which it was held that a victim's death immediately resulting from improper or unskilled treatment by attending physicians was no defense to

a charge of homicide against one who had inflicted a dangerous wound which necessitated the medical treatment, since neither negligent treatment nor neglect of an injury excuses a wrong-doer unless the treatment or neglect is the *sole cause* of death. Defendants' first assignment of error is overruled.

[2]  Defendants also assign as error the trial court's definition of "an unlawful act" and of "criminal negligence" and the application of those definitions to the lesser included offense of involuntary manslaughter. This constitutes their final assignment of error.

The record reveals that the trial judge defined "involuntary manslaughter" to be "the unintentional killing of a human being by an unlawful act and not amounting to a felony or by an act done in a criminally negligent way." This definition of involuntary manslaughter is taken from Pattern Jury Instructions for Criminal Cases in North Carolina, Criminal 206.50 (Replacement April 1973), and is a correct definition of that crime. *State v. Wrenn,* 279 N.C. 676, 185 S.E. 2d 129 (1971). Defendants do not challenge this definition.

The court then charged:

> For you to find the defendant guilty of involuntary manslaughter, the State must prove two things beyond a reasonable doubt: first that the defendant whose case you then have under consideration acted unlawfully or in a criminally negligent way. (It is an unlawful act for one person to strike another person in the chin and jaw and head with a board when not in his own self-defense or in the defense of another.) I instruct you that criminal negligence is more than mere carelessness. (A defendant's act was criminally negligent if, judging by reasonable foresight, it was done with such gross recklessness or carelessness as to amount to a heedless indifference to the safety and rights of others. I instruct you that it is an act of criminal negligence to be in a position to see and observe the condition of intoxication of a person and having reasonable grounds to believe that a person is intoxicated to strike him with a board and to cause him to fall prone upon the ground; that such an act is an act of criminal negligence.)

Defendants challenge that part of the foregoing charge enclosed in parentheses on the ground that it amounts to an expression of opinion by the judge and invades the province of the jury.

The court then charged in its final mandate to the jury that if it found from the evidence and beyond a reasonable doubt that on 17 September 1978 each defendant, acting either alone or in concert with the other, did unlawfully strike Oscar M. Melvin over the head with a piece of board approximately one by four inches in width and thickness and about five to six feet in length, or found that the board was used in a criminally negligent way to strike the victim under circumstances such that defendants should have realized the victim was intoxicated and not able to help himself if he were knocked to the ground in a prone position, and should further find that the acts and conduct of defendants proximately caused the victim's death, it would be the duty of the jury to return a verdict of guilty of involuntary manslaughter. Should the jury not so find or if it had a reasonable doubt as to any one or more of those things, then the jury was told to return a verdict of not guilty. Defendants contend this portion of the charge was erroneous.

The judge then charged the jury that regardless of how it found as to the male defendant it should separately consider the same charge as it related to the female defendant. The jury was then instructed that if it found from the evidence and beyond a reasonable doubt that on the date in question either defendant, acting alone or in concert with the other, struck the victim over the head with a piece of board one to four inches thick and five to six feet in length; or that either defendant, acting alone or in concert with the other, did in a criminally negligent way strike the victim in the chin and head with the board as described in the evidence and that the blows caused the victim to fall in a prone position on the sidewalk and that defendants should have reasonably foreseen that the victim was intoxicated and would be unable to take care of himself, and further found that such act thereby proximately caused the victim's death, it would be the duty of the jury to return a verdict of involuntary manslaughter. Should the jury fail to so find or if it had reasonable doubt as to any of the enumerated prerequisites, the jury was told that it should return a verdict

of not guilty. Defendants challenge the foregoing instructions and assign same as error.

In our opinion, reversible error does not appear from the challenged portions of the charge. The challenged portions do not contain an improper expression of opinion by the trial judge. The assignment of error based thereon is overruled.

Although the challenged portions are poorly organized and not recommended as a model to be followed, when those portions are considered in context with the charge as a whole, prejudicial error does not appear. A charge will be construed contextually, and isolated portions will not be held prejudicial when the charge as a whole is correct. *State v. Cook,* 263 N.C. 730, 140 S.E. 2d 305 (1965); *State v. Goldberg,* 261 N.C. 181, 134 S.E. 2d 334 (1964). The charge of the court must be read as a whole, and if it presents the law fairly and clearly to the jury, the fact that some expressions, standing alone, might be considered erroneous will afford no ground for reversal. *State v. Hall,* 267 N.C. 90, 147 S.E. 2d 548 (1966). Insubstantial technical errors which could not have affected the result will not be held prejudicial. "It is not sufficient to show that a critical examination of the judge's words, detached from the context and the incidents of the trial, are capable of an interpretation from which an expression of opinion may be inferred." *State v. Gatling,* 275 N.C. 625, 633, 170 S.E. 2d 593, 598 (1969); *see also State v. Alexander,* 279 N.C. 527, 184 S.E. 2d 274 (1971). Furthermore, we are satisfied that had the challenged portions of the charge been omitted and a perfect charge given in lieu thereof, the result of the trial would have been the same. There is no reason to believe that another trial would produce a different result.

We conclude that defendants had a fair trial free from prejudicial error. The decision of the Court of Appeals upholding the verdicts and judgments is

Affirmed.

Justice BROCK did not participate in the consideration or decision of this case.