STATE OF NORTH CAROLINA v. JOSHUA JAMES PARLEE

No. COA10-497

(Filed 4 January 2011)

## 1. Homicide— second-degree murder—sufficient evidence

The trial court did not err by failing to dismiss the charge of second-degree murder as there was sufficient evidence of all elements of the charge, including (1) malice; (2) that defendant's actions proximately caused the victim's death; and (3) that the victim "ingested" the Oxymorphone pill.

## 2. Appeal and Error— preservation of issues—constitutional argument—not raised at trial—no merit

Defendant waived appellate review of his argument that he received multiple punishments for the same act in violation of the Double Jeopardy Clauses of the United States and North Carolina Constitutions where defendant raised no objection based upon double jeopardy at trial. Even assuming *arguendo* that the issue was properly preserved, second-degree murder and sale or delivery of a controlled substance to a juvenile are not identical offenses for purposes of double jeopardy.

## 3. Evidence— relevance—admission—no prejudice

The trial court did not err in a second-degree murder case by admitting evidence regarding the manner in which defendant's mother obtained Oxymorphone pills where defendant failed to articulate how this evidence prejudiced his trial.

Appeal by defendant from judgments entered 18 September 2009 by Judge Joseph Crosswhite in Iredell County Superior Court. Heard in the Court of Appeals 26 October 2010.

*Attorney General Roy Cooper, by Assistant Attorney General LaToya B. Powell, for the State.*

*Richard E. Jester, for defendant-appellant.*

STEELMAN, Judge.

Where the State introduced evidence that defendant knew the drug that he sold to two minors was inherently dangerous, there was sufficient evidence of malice to submit the charge of second-degree

**STATE v. PARLEE**

[209 N.C. App. 144 (2011)]

murder to the jury. Where defendant supplied Oxymorphone to the victim and that person died of an acute Oxymorphone overdose, the State presented sufficient evidence that defendant's actions were the proximate cause of death to submit the charge of second-degree murder to the jury. Where the victim died of an acute Oxymorphone overdose, the State was not required to prove the specific manner in which the substance was introduced into his body. Where the constitutional issue of double jeopardy was not raised at trial, it is not preserved for appellate review. To prevail on appeal based upon an evidentiary ruling of the trial court, defendant is required to show both error and prejudice pursuant to N.C. Gen. Stat. § 15A-1443(a).

## I. Factual and Procedural Background

On 11 January 2008, Matt[1] rode the bus to Nate's residence, his friend and schoolmate. At approximately 7:00 p.m., Nate's mother drove them to a movie theater in Mooresville. While at the theater, Nate and Matt saw Joshua Parlee (defendant). Nate learned that defendant had prescription medication and approached defendant to buy a pill. Defendant stated that he had one pill left and that he would sell it to Nate. Matt was standing next to Nate while this conversation took place. Matt handed Nate a $20.00 bill. Nate gave the money to defendant in exchange for one Oxymorphone pill. Defendant told Nate that the pill was "Oxymorphone and that it's pretty strong pain medication." Defendant also told Nate not to "do anything destructive with it" and not to take a whole pill at once. Nate put the pill in his pocket, and they went outside to wait for Nate's mother to pick them up.

When they returned to Nate's residence, Matt and Nate played video games and watched movies until Nate's mother went to sleep. At approximately 11:00 p.m., Matt and Nate smoked marijuana. Thereafter, Nate split the Oxymorphone pill in half, ingested his half, and gave the other half to Matt. Nate ingested the pill by chewing it up and swallowing it with water. Nate did not see Matt ingest his half of the pill. After ingesting half of the pill, Nate felt "high" and remembered playing video games. The next thing Nate remembered was seeing flashing lights in front of his eyes and people asking him questions. Nate was hospitalized for nine days.

When police and EMS arrived on 12 January 2008 at approximately 9:46 a.m., Matt was deceased. Paramedics determined that

---

1. The State's and defendant's briefs identify the minors involved in this case by the pseudonyms Matt and Nate. We continue this mode of identification.

Matt had been dead for approximately three hours. A toxicology report revealed the presence of Oxymorphone in Matt's blood. The cause of death was an acute Oxymorphone overdose.

On 28 April 2008, defendant was indicted for second-degree murder, possession of a controlled substance with intent to sell and deliver, and sale or delivery of a controlled substance to a person under 16, but more than 13 years old. Defendant's case was called for trial on 9 September 2009. Defendant pled guilty to the offense of possession with intent to sell or deliver a Schedule II controlled substance. The jury found defendant guilty of the other two offenses. The trial court found defendant to be a prior record level II for felony sentencing purposes. Defendant was sentenced to 151 to 191 months imprisonment for the second-degree murder conviction. The trial court consolidated the remaining convictions and sentenced him to 61 to 83 months imprisonment to be served consecutively to the sentence for second-degree murder.

Defendant appeals.

## II. Motion to Dismiss—Second-Degree Murder Charge

[1] In his first argument, defendant contends that the trial court erred by failing to dismiss the charge of second-degree murder based upon the sufficiency of the evidence. We disagree.

### A. Standard of Review

"Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980) (citations omitted). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). We view the evidence "in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve." *State v. Scott*, 356 N.C. 591, 596, 573 S.E.2d 866, 869 (2002) (internal citations and quotation omitted).

### B. Analysis

In North Carolina, a murder proximately caused by "the unlawful distribution of opium or any synthetic or natural salt, compound,

derivative, or preparation of opium, or cocaine or other substance described in G.S. 90-90(1)d., or methamphetamine, when the ingestion of such substance causes the death of the user" is second-degree murder. N.C. Gen. Stat. § 14-17 (2007). Defendant contends that the State failed to prove: (1) malice; (2) that defendant's actions proximately caused Matt's death; or (3) that Matt "ingested" the Oxymorphone pill. We address each contention in turn.

### i. Malice

"Second-degree murder is the unlawful killing of a human being with malice but without premeditation and deliberation." *State v. Page*, 346 N.C. 689, 698, 488 S.E.2d 225, 231 (1997) (citations omitted), *cert. denied*, 522 U.S. 1056, 139 L. Ed. 2d 651 (1998). Our Supreme Court has held that the State is required to prove malice for a conviction of second-degree murder based upon the unlawful distribution of a controlled substance pursuant to N.C. Gen. Stat. § 14-17. *State v. Davis*, 305 N.C. 400, 426, 290 S.E.2d 574, 590 (1982). "[T]he malice necessary to support a conviction for second-degree murder does not necessarily mean an actual intent to take human life." *State v. Liner*, 98 N.C. App. 600, 605, 391 S.E.2d 820, 822 (quotation omitted), *disc. review denied*, 327 N.C. 435, 395 S.E.2d 693 (1990). Malice can arise "when an act which is inherently dangerous to human life is done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief." *State v. Reynolds*, 307 N.C. 184, 191, 297 S.E.2d 532, 536 (1982) (citation omitted).

In *Liner*, this Court addressed the sufficiency of the evidence of malice required to support a conviction for second-degree murder based upon the defendant supplying the victim with a controlled substance. 98 N.C. App. at 605, 391 S.E.2d at 822. In that case, the defendant provided three individuals with Dilaudid hydrochlorine. *Id.* at 603, 391 S.E.2d at 821. The first individual used the substance, and subsequently turned "deathly white" and stopped breathing. *Id.* The defendant administered mouth-to-mouth resuscitation and the individual later recovered. *Id.* Approximately one week later, the defendant provided the substance to a second individual, who became very ill and told the defendant he "wasn't going to do anymore, that it was bad." *Id.* The next day, the defendant went to the home of the victim and provided him with Dilaudid hydrochlorine. *Id.* at 604, 391 S.E.2d at 822. After snorting the substance, the victim died. *Id.*

The defendant was convicted of second-degree murder pursuant to N.C. Gen. Stat. § 14-17. *Id.* On appeal, the defendant argued that the trial court should have dismissed the charge because the State failed to produce sufficient evidence of malice. *Id.* at 605, 391 S.E.2d at 822. This Court held that "the evidence tends to show that defendant supplied the drugs to the victim . . . with the knowledge that the drugs were inherently dangerous due to the fact that Steve Dixon and Paul David Barbee had both become violently ill after using the drugs in defendant's presence." *Id.* We held that the jury could have reasonably inferred that the defendant acted with malice in supplying the controlled substance to the victim. *Id.*

In the light most favorable to the State, the evidence in the instant case tended to show that Nate and Matt approached defendant to purchase prescription medication. Defendant agreed to sell them an Oxymorphone pill for $20.00. When defendant gave Nate and Matt the pill he told them the following: (1) that the pill was "Oxymorphone and that it's pretty strong pain medication[;]" and (2) not to take a whole pill or "do anything destructive with it." Further, defendant stated to a friend on the night in question that he liked Oxymorphone because it "messe[d]" him up.

While the facts of this case are less compelling than those present in *Liner*, we hold that in the light most favorable to the State, the jury could have reasonably inferred from the evidence presented that defendant knew Oxymorphone was an inherently dangerous drug and acted with malice when he supplied Nate and Matt with the Oxymorphone pill.

## ii. Proximate Cause

Defendant also contends that the State failed to show that there was no intervening cause of Matt's death. Defendant argues that "the intervening cause and infliction of mortal wounds are the actions of Nate" because he split the Oxymorphone pill in half and handed half of it to Matt. It is well-established that:

"The act of the accused need not be the immediate cause of death. He is legally accountable if the direct cause is the natural result of the criminal act." *State v. Minton*, 234 N.C. 716, 722, 68 S.E.2d 844, 848 (1952); *State v. Everett*, 194 N.C. 442, 140 S.E. 22 (1927). There may be more than one proximate cause and criminal responsibility arises when the act complained of caused or directly contributed to the death. *State v. Luther*, 285 N.C. 570,

206 S.E.2d 238 (1974); *State v. Horner*, 248 N.C. 342, 103 S.E.2d 694 (1958).

*State v. Cummings*, 301 N.C. 374, 377-78, 271 S.E.2d 277, 279 (1980) (alteration omitted).

In the instant case, it is undisputed that defendant unlawfully sold Nate and Matt an Oxymorphone pill on 11 January 2008 for $20.00. After Nate and Matt returned home from the movies, Nate split the pill in half and the two consumed the pill. Matt was pronounced dead the next morning. Matt's cause of death was an acute Oxymorphone overdose. In the light most favorable to the State, the evidence was sufficient to submit to the jury the question of whether the act of defendant selling Nate and Matt the Oxymorphone pill was a proximate cause of Matt's death. *See id.* at 378, 271 S.E.2d at 279-80; *State v. Bailey*, 184 N.C. App. 746, 749, 646 S.E.2d 837, 839 (2007) ("[T]he question of whether defendant's conduct was the proximate cause of death is a question for the jury." (citation omitted)).

### iii. "Ingestion"

Defendant contends that the State failed to prove that Matt "ingested" the Oxymorphone pill as required by N.C. Gen. Stat. § 14-17 because there was no evidence presented as to how Matt consumed his half of the pill. Defendant argues that to "ingest" the pill, Matt had to have taken it by mouth and swallowed it. By making such an argument, defense counsel ignores the well-established principle that, "where possible, the language of a statute will be interpreted so as to avoid an absurd consequence." *State v. Spencer*, 276 N.C. 535, 547, 173 S.E.2d 765, 773 (1970) (quotation omitted). At trial, toxicology reports showed that lethal amounts of Oxymorphone were present in Matt's blood and a physician opined that the cause of death was an acute Oxymorphone overdose. Plenary evidence at trial showed that Matt ingested half of the Oxymorphone pill.

The trial court did not err by denying defendant's motion to dismiss the charge of second-degree murder. Each of these arguments is without merit.

### III. Double Jeopardy

[2] In his second argument, defendant contends that he received multiple punishments for the same act in violation of the Double Jeopardy Clauses of the United States and North Carolina Constitutions. We disagree.

At the sentencing hearing, the State specifically addressed the question of whether the trial court was permitted to impose consecutive sentences in this case. Defense counsel raised no objection based upon double jeopardy at that time or when the trial court actually imposed the sentences. It is well settled that "constitutional error will not be considered for the first time on appeal." *State v. Chapman*, 359 N.C. 328, 366, 611 S.E.2d 794, 822 (2005) (citations omitted); *see also State v. Madric*, 328 N.C. 223, 231, 400 S.E.2d 31, 36 (1991) (holding that the defendant had waived the double jeopardy issue where the defendant failed to raise it at trial). Thus, defendant has waived appellate review of this issue.

Even assuming *arguendo* that counsel had properly preserved this issue for appeal, his contentions are without merit. The Double Jeopardy Clause of the United States and North Carolina Constitutions protects a defendant against multiple punishments for the same offense. *State v. Gardner*, 315 N.C. 444, 451, 340 S.E.2d 701, 707 (1986). Our Supreme Court has stated that "where a legislature clearly expresses its intent to proscribe and punish exactly the same conduct under two separate statutes, a trial court in a single trial may impose cumulative punishments under the statutes." *Id.* at 453, 340 S.E.2d at 708 (quotation and emphasis omitted). We first note that the North Carolina General Assembly made the offenses that defendant was convicted of separate and distinct under our General Statutes, each enumerated in different chapters and subsections. *See* N.C. Gen. Stat. §§ 14-17, 90-95(a)(1), 90-95(e)(5).

"Where . . . a single criminal transaction constitutes a violation of more than one criminal statute, the test to determine if the elements of the offenses are the same is whether each statute requires proof of a fact which the others do not." *State v. Etheridge*, 319 N.C. 34, 50, 352 S.E.2d 673, 683 (1987) (citations omitted). However, one offense is a lesser included offense if all the essential elements of the lesser offense are also essential elements of the greater offense, and the two crimes are considered identical for double jeopardy purposes. *Id.* The elements of second-degree murder in this case pursuant to N.C. Gen. Stat. § 14-17 are: (1) the unlawful distribution of a controlled substance under N.C. Gen. Stat. § 90-90(1)d; (2) ingestion of the controlled substance by an individual; and (3) the controlled substance proximately caused the death of the user. The elements of sale or delivery of a controlled substance to a juvenile pursuant to N.C. Gen. Stat. § 90-95(e)(5) are: (1) the defendant was 18 years old or over; (2) defendant sold or delivered a controlled substance; and

(3) to a person under the age of 16 and older than 13 years old. Each of these offenses includes an essential element not present in the other. Second-degree murder and sale or delivery of a controlled substance to a juvenile are not identical offenses for purposes of double jeopardy.

Defendant also pled guilty to possession with intent to sell or deliver a Schedule II controlled substance. Defendant failed to assert that this conviction and the murder conviction constituted double jeopardy. Further, it is well settled that "possession of a controlled substance and distribution of the same controlled substance are separate and distinct crimes, and each may be punished as provided by law, even where the possession and distribution in point of time were the same." *State v. Brown*, 20 N.C. App. 71, 72, 200 S.E.2d 666, 667 (1973) (citations omitted), *cert. denied*, 284 N.C. 617, 202 S.E.2d 274 (1974).

This argument is without merit.

## IV. Irrelevant Testimonial Evidence

[3] In his third argument, defendant contends that the trial court erred by admitting evidence regarding the manner in which defendant's mother obtained Oxymorphone pills. We disagree.

At trial, the State introduced evidence tending to show that defendant obtained the Oxymorphone pills from his mother, who had two prescriptions for the drug. The challenged testimony dealt with the attempts by defendant's mother to refill the prescriptions early. Defendant argues that this evidence was completely irrelevant to this case. However, defendant fails to articulate how this evidence prejudiced his trial. *See State v. Gappins*, 320 N.C. 64, 68, 357 S.E.2d 654, 657 (1987) ("The burden is on the party who asserts that evidence was improperly admitted to show both error and that he was prejudiced by its admission. The admission of evidence which is technically inadmissible will be treated as harmless unless prejudice is shown such that a different result likely would have ensued had the evidence been excluded." (internal citations omitted)). Defendant has failed to meet his burden of showing prejudice. N.C. Gen. Stat. § 15A-1443(a) (2009).

This argument is without merit.

NO ERROR.

Judges BRYANT and ERVIN concur.