STATE OF NORTH CAROLINA v. WILLIAM EARL DAVIS

No. 848SC1126

(Filed 1 October 1985)

1. **Criminal Law § 5.1; Homicide § 28.7— defense of temporary insanity — insufficient evidence**

   The trial court did not err in refusing to instruct the jury on the defense of temporary insanity where defendant's only evidence of alleged insanity was his testimony that, upon finding his wife in a motel room with two men, he "lost his mind," "went blind or something," "went pure bizarre," "was all to pieces," and "went completely out of his mind." Rather, such testimony tends to show that defendant acted in the heat of passion.

2. **Criminal Law § 71— instantaneous conclusion of the mind**

   Testimony by a witness, when asked where she saw defendant go upon his arrival at a motel, that "I would say what looks like room fifty-one" was competent as an instantaneous conclusion of the mind.

3. **Criminal Law § 71— testimony based on knowledge and perceptions — shorthand statement of fact**

   A witness's testimony that the victim "looked just like his ribs were stomped in" and that the victim "won't very strong" was admissible based on the witness's knowledge of the victim and her perceptions, and her characterization of the victim's appearance was admissible as a shorthand statement of fact.

4. **Homicide § 15.5— expert testimony — cause of injuries**

   A pathologist was properly permitted to state his opinion that the blunt force injuries he noted in performing an autopsy on the victim "could have been caused by a foot or boot" and that more force was involved in causing the victim's injuries than simply bumping into things or falling down.

5. **Criminal Law § 87— repetitious questions — clarification of testimony**

   The trial court did not err in permitting the State to ask a witness repetitious questions as to how many times defendant kicked the victim where it appeared that on several occasions the questions were posed to clarify the witness's testimony and the witness was reluctant to testify.

6. **Criminal Law § 88.1— leading questions on cross-examination**

   The trial court did not abuse its discretion in permitting the State to ask a police officer leading questions on cross-examination concerning his observa-

tions of the appearance and emotions of a witness at the time he gave a prior inconsistent statement.

APPEAL by defendant from *Barefoot, Judge.* Judgments entered 14 June 1984 in Superior Court, WAYNE County. Heard in the Court of Appeals 21 August 1985.

*Attorney General Lacy H. Thornburg by Special Deputy Attorney General Isham B. Hudson, Jr., for the State.*

*Barnes, Braswell & Haithcock by R. Gene Braswell and S. Reed Warren for defendant appellant.*

COZORT, Judge.

Defendant was indicted for second-degree murder and felonious breaking and entering after forcibly entering a hotel room and discovering his wife with two other men. One of the men, Billy Williford, died after being assaulted repeatedly by the defendant. Defendant was convicted by a jury of voluntary manslaughter and nonfelonious breaking and entering. On appeal, defendant contends the trial court erred by refusing to instruct the jury on the defense of temporary insanity and in its rulings on various evidentiary questions. For reasons stated below, we find no prejudicial error.

The State's evidence tended to show the following:

On the afternoon of 4 September 1983, defendant's wife checked into the Wayne Motel with Williford and Melvin Bridgers. Defendant and his son came to the motel, broke down the door to the room occupied by the three, and forcibly entered the room. Williford was standing near the bed wearing only his shorts, having just finished taking a bath; defendant's wife was lying on the bed; and Bridgers was about ten feet inside the door. Defendant struck Bridgers on the eye, causing it to bleed. He then repeatedly hit and kicked Williford in the face and ribs. After about 20 minutes, everyone except Williford left the room. Williford was left lying on the floor. According to Bridgers, Williford looked like he was dead. He died from injuries to the head and brain caused by blows to the skull by a blunt object.

The defendant testified that he "just lost [his] mind" when he saw his wife on the bed and Williford standing there "with no

clothes on." He slapped Williford a few times and "may have" kicked him. He testified he never intended to kill Williford and did not believe he did because Williford was all right when he left.

[1] Defendant's principal assignment of error is the trial court's refusal to instruct the jury on the defense of not guilty by reason of temporary insanity. The defendant contends he was entitled to an instruction on temporary insanity because the defendant's evidence showed he was unable to distinguish between right and wrong when he found his wife in the motel room, which affected his ability to form a specific intent to commit the crime of voluntary manslaughter, thus requiring an instruction on temporary insanity. Upon review of all the evidence in the case, the trial court's charge to the jury and the defendant's proposed charge on temporary insanity, we find the defendant was not entitled to an instruction on temporary insanity.

The request for instruction submitted by defendant read, in pertinent part, as follows:

> I instruct you that if you find that at the time that the Defendant, William Earl Davis, found his wife in Room 51 of the Wayne Motel with Billy Williford, who was undressed except for his undershorts, and Melvin Bridgers, another male, and that at that time William Earl Davis temporarily lost his sanity in that he did not recognize or know right from wrong at the time that he engaged in a fight or beating of Billy Williford, which resulted in the death of Billy Williford, then in that event I direct that you return a verdict of Not Guilty.

The trial court submitted to the jury three possible verdicts: guilty of voluntary manslaughter, guilty of involuntary manslaughter, and not guilty. Its instructions to the jury were, in pertinent part, as follows:

> Now I charge that for you to find the Defendant guilty of voluntary manslaughter, the State must prove two things beyond a reasonable doubt. First, that the Defendant intentionally beat Billy Williford with his hands, fists, and feet and second, this beating was a proximate cause of Billy Williford's death. . . . If you do not find the Defendant guilty of voluntary manslaughter, you must consider whether he is

guilty of involuntary manslaughter. Involuntary manslaughter is the unintentional killing of a human being by an unlawful act, not amounting to a felony, or by an act done in a criminally negligent way. For you to find the defendant guilty of involuntary manslaughter, the State must prove two things to you beyond a reasonable doubt: first, that the defendant acted in a criminally negligent way. Now criminal negligence is more than mere carelessness. The defendant's act was criminally negligent if judging by reasonable foresight it was done with such gross recklessness or carelessness as to amount to a heedless indifference to the safety and rights of others. Second, the State must prove this criminally negligent act a [sic] proximately caused Billy Williford's death. . . . The burden of proving accident is not on the defendant. His assertion of accident is merely a denial that he has committed any crime. The burden remains on the State to prove the defendant's guilt beyond a reasonable doubt so I charge that if you find from the evidence beyond a reasonable doubt that on September 4, 1983, William Earl Davis intentionally beat Billy Williford with his hands, fists, and feet and thereby proximately caused Billy Williford's death, it will be your duty to return a verdict of guilty of voluntary manslaughter. However, if you do not so find, or if you have a reasonable doubt as to one or more of these things, then you would not return a verdict of guilty of voluntary manslaughter and if you do not return a verdict of guilty [of] voluntary manslaughter, then you must determine whether he is guilty of involuntary manslaughter. If you find from the evidence beyond a reasonable doubt that on or about September 4, 1983, William Earl Davis beat Billy Williford with his hands, fist, and feet and that this was done in a criminally negligent way thereby proximately causing Billy Williford's death, it would be your duty to return a verdict of guilty of involuntary manslaughter. However, if you do not so find, or if you have a reasonable doubt as to one or more of these things then it would be your duty to return a verdict of not guilty.

The defendant filed no notice on the defense of insanity in accordance with G.S. 15A-959. He offered no expert testimony on his mental condition or mental history. Defendant's only conceivable evidence on the issue of insanity was his testimony on

State v. Davis

numerous occasions that he "lost [his] mind," "went blind or something," "went pure bizarre," "was so mixed up right then," "was all to pieces," and "went completely out of [his] mind."

This testimony fails to show any evidence of insanity, either permanent or temporary. What it shows is the killing was done in the "heat of passion," which is killing " 'without premeditation but under the influence of sudden "passion," this term means any of the emotions of the mind known as rage, anger, hatred, furious resentment, or terror, rendering the mind incapable of cool reflection.' [Citations omitted.]" *State v. Jones,* 299 N.C. 103, 109, 261 S.E. 2d 1, 6 (1980). A homicide may be mitigated from murder to manslaughter when there are circumstances that cause an accused to kill another out of a heat of passion. *Id.* That is precisely what happened in this case. The defendant was indicted for second-degree murder. The trial court correctly granted defendant's motion to send the case to the jury as a manslaughter case, not second-degree murder. The trial court then correctly instructed the jury on both voluntary and involuntary manslaughter. There was no evidence of insanity, and it is not error to refuse to instruct on insanity when there is no evidence of such. *State v. Jones,* 293 N.C. 413, 238 S.E. 2d 482 (1977). This assignment of error is without merit.

The remainder of defendant's assignments of error challenge the trial court's rulings on evidentiary questions occurring during the trial. Upon examination of the record, we find no prejudicial error.

[2] We first consider defendant's exception to statements of Joannie Soloman, the sister of the motel manager and a temporary resident of the motel. When asked by the State where she saw the defendant go upon his arrival at the motel, she answered, "I would say what looks like room fifty-one." Defendant contends her answer was based on speculation. The witness, as a resident of Room 41, had earlier testified she knew where Room 51 was in reference to her own room. Based on her observations, her response was properly admitted as a "natural and instinctive inference" or " 'instantaneous conclusions . . . derived from observation of a variety of facts presented to the senses at one and the same time.' " *State v. Joyner,* 301 N.C. 18, 23, 269 S.E. 2d 125, 129 (1980), *quoting State v. Leak,* 156 N.C. 643, 647, 72 S.E. 567, 568

(1911). Similarly, Miss Soloman's response, when asked whether defendant entered Room 51 was: "I presume because I heard—" and "[s]aw him sh - shut the door or whatever." These statements, while reflecting either poor memory or indistinct perception, are nonetheless competent and admissible because they were rationally based on the firsthand observation of the witness, rather than mere speculation or conjecture. *Id.* at 24, 269 S.E. 2d at 129.

[3]   Defendant also excepts to Irene Sheehan's testimony that the victim "looked just like his ribs were stomped in," and her testimony that "[Williford] won't very strong." Sheehan had known the victim all his life and discovered the body in the motel room. Both statements were admissible based on her own knowledge of the victim and her perceptions, and her characterization of the victim's appearance was, at worst, a mere shorthand statement of the facts. *See* 1 Brandis on North Carolina Evidence Sec. 125 (1982). In addition, the witness's description was corroborated by the earlier testimony of the eyewitness Bridgers, and was consistent with later expert medical testimony.

For similar reasons, we find no prejudicial error in the admissibility of the statement by the investigating police officer that the motel room door "appeared like it had been kicked in." The officer's own subsequent testimony as well as that of other witnesses was sufficiently corroborative.

[4]   Defendant's next assignments of error concern the admissibility of certain opinion evidence of the State's expert medical witness, Dr. John D. Butts. Dr. Butts testified that in his professional opinion, the "blunt forced injuries" he noted in performance of an autopsy of the victim Williford "could have been caused by a foot or boot." He further testified that in his opinion "more force [was] involved" in causing the victim's injuries than "just simply bumping into things or simply falling down." Defendant contends this testimony was based purely on speculation and had no probative value.

Dr. Butts testified as an expert in the field of forensic pathology. As a staff physican in the office of the Chief Medical Examiner for the State, Dr. Butts was qualified to render the above opinions. His detailed descriptions of the internal and external injuries to Williford, ranging from a torn liver, fractured ribs, and subdural hematoma to "several long . . . bruises . . .

above the hip" in a "V-shaped pattern," are entirely consistent with the opinions he gave. The trial court is afforded a wide latitude of discretion when making a determination about the admissibility of expert testimony. *State v. Bullard*, 312 N.C. 129, 322 S.E. 2d 370 (1984). Expert testimony is admissible when it can assist the jury to draw certain inferences from facts because the expert is better qualified. *Id.*

[5]   Defendant's next assignment of error concerns a series of questions posed by the State to Melvin Bridgers on direct examination. On at least six occasions, the State asked Bridgers how many times the defendant kicked Williford. Defendant contends on appeal that the trial court's allowing this repetitious questioning, over defendant's objections, was prejudicial error. It is the responsibility of the trial court to control the conduct and course of trial, and its discretion will not be disturbed unless manifestly abused. *State v. Covington*, 290 N.C. 313, 334-35, 226 S.E. 2d 629, 644 (1976). Upon reviewing the entirety of Bridgers' testimony, we note that on more than one occasion the question appeared to be posed for purposes of clarification. In addition, there is evidence in the record that Bridgers was reluctant to testify; that his perceptions may have been clouded by his state of intoxication and his wounded eye at the time of the crime; and that a statement given by Bridgers to police was inconsistent with his later testimony at trial. We find no abuse of discretion in the trial court's allowing repetitious questioning which clarified the witness's testimony.

[6]   We next consider defendant's assignments of error concerning the State's cross-examination of Goldsboro Police Sergeant Perry L. Sharpe. The defendant called Sergeant Sharpe to testify about a prior inconsistent statement given by Bridgers. On cross-examination, Sergeant Sharpe was asked several questions pertaining to his observations of Bridgers' condition at the time he gave the prior statement: whether Melvin Bridgers "was in pain from his eye," whether he "look[ed] like he needed a drink," whether he appeared "distracted from the import or the meaning of [Sharpe's] questions," and whether Sergeant Sharpe's difficulty in finding him was a result of Bridgers' "fear of the courtroom."

In North Carolina, counsel is given wide latitude in the conduct of cross-examination. This is especially applicable in the for-

mulation of leading questions by a cross-examiner. Such matters lie in the discretion of the trial court and in the absence of abuse of discretion, the exercise of such discretion will not be disturbed on appeal. *State v. Corbett,* 307 N.C. 169, 297 S.E. 2d 553 (1982). Defendant has failed to demonstrate abuse of discretion or prejudice, as the responses given by Sergeant Sharpe were within his personal knowledge from his observations of Bridgers, and appearance and emotions of another are proper subject matter for opinion testimony by non-experts. *State v. Moore,* 276 N.C. 142, 146, 171 S.E. 2d 453, 455-56 (1970). Moreover, Bridgers admitted on the stand he had been drinking at the time of the offense and had a drinking problem, that his eye was bleeding, and that after the events occurred he was "scared" and he delayed reporting what happened. There was no error in the trial court's rulings during Sergeant Sharpe's cross-examination.

We have examined the remainder of defendant's assignments of error and we find them to be without merit. Having reviewed all assignments of error by the defendant, we find

No error.

Chief Judge HEDRICK and Judge ARNOLD concur.