**STATE v. WOOD**

[149 N.C. App. 413 (2002)]

No. COA01-373

(Filed 19 March 2002)

**1. Homicide— murder—instruction on involuntary manslaughter refused**

The trial court did not err in a prosecution which resulted in a second-degree murder conviction by denying defendant's requested instruction on the lesser included offense of involuntary manslaughter. Several witnesses observed the altercation between defendant, another man, and the victim; one witness watched defendant "stomp" the victim in the face; another testified that he saw defendant kick the victim in the head and stomach; and this witness also testified that defendant and the other man danced around after the beating as if they were happy, giving each other a high five. This evidence is wholly inconsistent with a killing resulting from culpable negligence or an act not amounting to a felony.

**2. Homicide— heat of passion—instruction refused**

The trial court did not err in a first-degree murder prosecution (which resulted in a second-degree murder conviction) by refusing defendant's requested instruction on heat of passion where the prosecution arose from the beating of a man who allegedly attempted to abduct a child. A significant amount of time passed following the attempted abduction and defendant's evidence indicates that he was capable of cool reflection during the confrontation.

**3. Homicide— self-defense—instruction on aggressor—evidence sufficient**

The trial court did not err in its instruction on self-defense in a prosecution resulting in a second-degree murder conviction where the court instructed the jury that defendant would lose the benefit of self-defense if the jury determined that defendant was the aggressor where there was more than sufficient evidence that defendant could have been the aggressor.

**4. Discovery— threat made by defendant—timely furnished**

The trial court did not err in a first-degree murder prosecution (which resulted in a second-degree murder conviction) by denying defendant's motion to suppress evidence of a threat allegedly made by defendant where defendant contended that the State failed to provide timely discovery, but the State received the report on 22 May and supplied it to defendant on 23 May, nearly three weeks before the trial began.

**5. Appeal and Error— constitutional objection—not raised at trial**

The Court of Appeals did not consider a defendant's argument that the court unconstitutionally charged on first-degree murder where defendant did not object at trial on constitutional grounds.

Appeal by defendant from judgment entered 16 June 2000 by Judge L. Oliver Noble, Jr., in Cleveland County Superior Court. Heard in the Court of Appeals 31 January 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Thomas J. Pitman, for the State.*

*Rudolf Maher Widenhouse & Fialko, by M. Gordon Widenhouse, Jr., for defendant-appellant.*

SMITH, Judge.

Defendant was indicted on 21 February 2000 for first degree murder and felonious breaking or entering. Following a trial, defendant was convicted by a jury of second degree murder and felonious breaking or entering. The trial court entered judgments on the verdicts, and defendant appeals.

The evidence at trial tended to show that on 21 August 1998, defendant was at a game room shooting pool and drinking alcoholic

beverages with a friend, Michael Pasour. The game room was located at the apartment building where Pasour lived with Tina Padgett and her six year old son, Joshua. A stranger drove up outside the game room and allegedly attempted to persuade Joshua to get inside the vehicle. Defendant saw the driver motion to Joshua. After the stranger drove away, Joshua told Pasour and defendant that the stranger had tried to pick him up. They informed the boy's mother, who called 911. Officer Christopher Moore arrived on the scene around 7:20 p.m. He reported that defendant was angry. In his type-written report, Moore stated that he heard defendant say "he would kick" the stranger's "ass." Defendant admitted at trial that he recalled saying to the officer that such a person deserved to have his "tail beat." Defendant was able to identify the vehicle the stranger drove, and provided a partial license plate number.

After the officer left, defendant also left in his red truck. On the way home, defendant observed the vehicle driven by the stranger. He returned to Padgett's apartment and called for Pasour. The two men then went in search of the alleged perpetrator. Defendant drove to an apartment complex where Roger Dale McDaniel lived. Roxanne Bell, who was washing her car outside the complex, observed a red truck pull into the parking lot and two men get out "in a rage." Bell heard defendant say that McDaniel was a pervert. Defendant and Pasour knocked on the door to McDaniel's apartment. They also beat and kicked on the door, which eventually broke free and opened. Pasour looked inside the apartment for McDaniel but found no one. The men began walking toward defendant's truck. McDaniel then emerged from behind the apartment building. Defendant, Pasour, and McDaniel approached each other. McDaniel reached inside his shirt to retrieve a handgun. Defendant testified that he wrestled McDaniel in an attempt to disarm him; he claimed that Pasour struck McDaniel in the face and that McDaniel dropped the gun and fell to the ground. Defendant admitted that he kicked the weapon several feet away from the place where McDaniel fell. Witnesses testified that defendant and Pasour then struck McDaniel with their fists and kicked him as he lay on the ground. Roxanne Bell testified that she saw defendant kick McDaniel in the head.

An autopsy revealed that McDaniel had bruises on his face, neck, and body. He also had blood in his lungs and stomach. The pathologist testified that the victim died from an injury to his spinal cord and from the aspiration of blood.

I.

**[1]** Defendant first alleges the trial court erred in denying defendant's requested instruction on the lesser included offense of involuntary manslaughter. We disagree.

The trial court "has an obligation to fully instruct the jury on all substantial and essential features of the case embraced within the issue and arising on the evidence." *State v. Harris*, 306 N.C. 724, 727, 295 S.E.2d 391, 393 (1982) (citing *State v. Ward*, 300 N.C. 150, 266 S.E.2d 581 (1980)).

> The purpose of a charge is to give a clear instruction which applies the law to the evidence in such a manner as to assist the jury in understanding the case and in reaching a correct verdict.

*Id.* (citation omitted). Nevertheless, a trial court "is not required to submit lesser included offenses for a jury's consideration when the State's evidence is positive as to each and every element of the crime charged and there is no conflicting evidence related to any element of the crime charged." *State v. Washington*, 142 N.C. App. 657, 660, 544 S.E.2d 249, 251, *disc. review denied*, 353 N.C. 532, 550 S.E.2d 165 (2001) (citation omitted). In fact, "[t]he mere possibility that a jury might reject part of the prosecution's evidence does not require submission of a lesser included offense." *State v. Hamilton*, 132 N.C. App. 316, 321, 512 S.E.2d 80, 84 (1999).

Involuntary manslaughter is "the unlawful and unintentional killing of another human being, without malice, which proximately results from an unlawful act not amounting to a felony . . . or from an act or omission constituting culpable negligence." *State v. Wallace*, 309 N.C. 141, 145, 305 S.E.2d 548, 551 (1983). Culpable negligence is "such reckless or careless behavior that the act imports a thoughtless disregard of the consequences of the act or the act shows a heedless indifference to the rights and safety of others." *State v. Everhart*, 291 N.C. 700, 702, 231 S.E.2d 604, 606 (1977).

In this case, the trial court instructed the jury on the elements of first degree murder, second degree murder, and voluntary manslaughter, which is the unlawful killing of a human being without malice, premeditation, or deliberation. *State v. Robbins*, 309 N.C. 771, 309 S.E.2d 188 (1983). As mentioned above, several witnesses observed the altercation between defendant, Michael Pasour, and the victim, Roger Dale McDaniel. In fact, Kristy Harbison testified that she

watched defendant "stomp" the victim in the face. Chris James testified that he observed the attack and saw defendant kick the victim in the head and stomach. James also testified that after the beating the men pranced around as if they were happy, and "they gave each other a high five." This evidence is wholly inconsistent with involuntary manslaughter, which involves a killing resulting from culpable negligence or from an act not amounting to a felony. Defendant's assignment of error to the contrary is overruled.

## II.

[2] Defendant next argues the trial court erred in denying defendant's request for an instruction that defendant's actions were brought about by heat of passion. Heat of passion is a killing done without premeditation and under the influence of a " 'sudden passion.' " *State v. Davis*, 77 N.C. App. 68, 72, 334 S.E.2d 509, 512 (1985) (citation omitted). Heat of passion has been defined by our Supreme Court as "any of the emotions of the mind known as rage, anger, hatred, furious resentment, or terror, rendering the mind incapable of cool reflection." *State v. Jennings*, 276 N.C. 157, 161, 171 S.E.2d 447, 450 (1970) (citations omitted). As explained above, the trial court is obliged to instruct the jury on the "essential features of the case embraced within the issue and arising on the evidence." *Harris*, 306 N.C. at 727, 295 S.E.2d at 393. Defendant contends that the deadly assault resulted from the heat of passion aroused by the victim's alleged attempt to abduct the six-year-old boy.

In the case *sub judice*, the testimony presented at trial indicates that a significant amount of time passed following the attempted abduction. First, there was the arrival of Officer Moore. Next, on his way home after the attempted abduction, defendant observed the alleged abductor's car, drove back to the apartment building where Michael Pasour lived, and defendant and Pasour went in search of the man. After breaking into McDaniel's apartment, the two men walked back to defendant's truck, ostensibly to leave the apartment complex. Witnesses then observed the altercation involving defendant, the victim, and Pasour. As mentioned above, Kristy Harbison saw defendant "stomp" the victim in the face. Chris James observed the attack and saw defendant kick the victim in the head and stomach. This evidence of the time and acts involved does not support a jury instruction on the heat of passion brought about by a sudden provocation which would " 'naturally and reasonably arouse the passions of an ordinary man beyond his power of control.' " *State v. Mathis*, 105 N.C. App. 402, 406, 413 S.E.2d 301, 304 (1992) (citation omitted).

By contrast, defendant testified that following the attempted abduction, he was upset but "not furious." After failing to find McDaniel in his apartment, defendant and Pasour attempted to return to defendant's truck when McDaniel appeared from behind the apartment building and approached the two men. According to defendant, when McDaniel went for a weapon under his clothing, the two men grabbed him and tried to separate him from the handgun. Once the weapon was free, defendant admitted that he kicked the gun "at least six" times to remove it from the immediate vicinity of the altercation. He claimed he purposefully did not pick up the weapon because he had a criminal record and did not want his fingerprints on the gun. Defendant then claims he turned and noticed Pasour hitting and kicking McDaniel, and he persuaded Pasour to stop the attack because he "did not want the man to die." He testified that he rolled McDaniel onto his stomach because he heard him choking and apparently wanted to help him breathe more easily until the authorities arrived. This evidence indicates that defendant was capable of cool reflection during the confrontation which ended in McDaniel's death. The trial court did not err in refusing defendant's requested instruction on heat of passion.

## III.

[3] Defendant next argues the trial court erred in overruling defendant's objections to an instruction that defendant would lose the benefit of self-defense if the jury determined that he was the aggressor in bringing on the fight resulting in McDaniel's death. The trial court instructed the jury that defendant would be excused from murder or manslaughter based on self-defense,

> if he was not the aggressor in bringing on the fight, and did not use excessive force under the circumstances. If the Defendant voluntarily and without provocation entered the fight, he would be considered the aggressor.

Self defense completely excuses a defendant for the killing of another person if four conditions are met:

> (1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

> (2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

(3) defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and (4) defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*State v. Maynor,* 331 N.C. 695, 699, 417 S.E.2d 453, 455 (1992) (citations omitted). If only the first two elements of self defense are met, the defendant loses the right to perfect self defense but may nevertheless be entitled to imperfect self defense and in that case would be guilty of at least voluntary manslaughter. *State v. Wilson,* 304 N.C. 689, 285 S.E.2d 804 (1982). In *State v. Temples,* 74 N.C. App. 106, 109, 327 S.E.2d 266, 268, *disc. review denied,* 314 N.C. 121, 332 S.E.2d 489 (1985), this Court held that it was error for the trial court to instruct the jury on entering a fight voluntarily when "there is no evidence from which the jury could find that defendant voluntarily entered a fight with the deceased." In the instant case, however, more than sufficient evidence was presented to indicate that defendant could have been the aggressor in the fight resulting in the victim's death. Defendant admitted to Officer Moore minutes after the attempted abduction that a person who would try to pick up a young child deserved to have his "tail beat." As he was driving home, he observed the car driven by the alleged abductor, returned to pick up Michael Pasour, and the two men drove to the victim's apartment. The men pounded and kicked on the door to McDaniel's apartment until the lock on the door broke. Roxanne Bell testified that, moments later, when McDaniel approached the two men outside the apartment building, defendant and Pasour "started walking up on him," and that defendant called McDaniel a "pervert." McDaniel then reached for his handgun and the two men grabbed him and subsequently disarmed him; both men, according to Bell, then struck McDaniel with their fists and kicked him. On this evidence, the jury could find that defendant was the aggressor or voluntarily entered the fight resulting in the death of McDaniel. Thus the trial court's jury instruction on the issue of self defense was not error.

IV.

**[4]** Defendant next contends the trial court erred in denying his motion to suppress evidence of a threat that defendant allegedly made because the State failed to provide timely discovery of the statement. We disagree.

On motion of a defendant, the trial court must order the State:

> To divulge, in written or recorded form, the substance of any oral statement relevant to the subject matter of the case made by the defendant, regardless of to whom the statement was made, within the possession, custody or control of the State, the existence of which is known to the prosecutor or becomes known to him prior to or during the course of trial.

N.C. Gen. Stat. § 15A-903(a)(2). In *State v. Patterson*, 335 N.C. 437, 439 S.E.2d 578 (1994), the Supreme Court held it was error for the trial court to fail to find that the State violated the discovery statute regarding the disclosure of a statement made by the defendant. In *Patterson*, the State did not disclose the statement until the trial was underway. *Id.* In spite of this violation, the Supreme Court held that the trial court's failure to find the State in violation of the discovery statutes was harmless error.

In the present case, however, the State provided defendant with a copy of the typewritten report by Officer Christopher Moore on 23 May 2000, *nearly three weeks* before the trial began on 12 June 2000. The State received this report from Officer Moore on or around 22 May 2000, and supplied defendant with a copy the following day. We cannot say the disclosure of Officer Moore's typewritten report twenty days prior to trial violated the statutory requirement of timely discovery. Defendant's assignment of error is overruled.

V.

[5] Finally, defendant argues the trial court unconstitutionally instructed the jury on the offense of first degree murder. Defendant specifically alleges that all the evidence showed that defendant responded to an armed attack by the victim and that he thus could not be found guilty of first degree murder.

We note that defendant did not object to the first degree murder instruction on constitutional grounds during the trial, and that we are therefore not required to consider defendant's assignment of error. *See State v. Wilkinson*, 344 N.C. 198, 221, 474 S.E.2d 375, 387 (1996) (holding that a reviewing court "is not required to pass upon a constitutional issue unless it affirmatively appears that the issue was raised and determined in the trial court"). Thus, the assignment of error is overruled.

Defendant has offered no argument in support of the remaining assignments of error in the record. Therefore they are deemed abandoned. N.C.R. App. P. 28(b)(5).

No error.

Judges TIMMONS-GOODSON and BRYANT concur.