TYSON, Judge.
Michael Lavonne Paylor ("Defendant") appeals from judgment entered after a jury convicted and returned a verdict of guilty of second-degree murder. We find no error.
I. Background
Triangle Grading and Paving ("Triangle") is a construction company, which owns a facility to maintain and repair its heavy machinery and equipment in Alamance County. Defendant began working as a pressure washer at Triangle in July 2016. The equipment was required to be pressure washed before and after it was serviced and repaired. The machinery was brought or driven by others to the pressure washing area, parked, and left for Defendant to wash.
The Occupational Safety and Health Administration requires any piece of heavy machinery with a blade or bucket to have its blade or bucket lowered to the ground when parked. This rule prevents injury from falling equipment and also helps prevent the machinery from rolling. Lowering a blade or bucket can cause the wheels of the machinery to lift off of the ground. The pressure washer may have to stand on the wheels to perform his duties, which may increase the risk the employee could fall.
Defendant was described as cordial to other employees, but inclined to keep to himself. In October 2016, Defendant reported he had experienced issues with other employees working at the truck shop where he clocked in, and he requested to clock in elsewhere. Defendant was instructed to clock in at the heavy equipment shop.
Eddie Leon Irvine was the supervisor at Triangle's heavy equipment shop. Irvine was described as a "great boss," who took his work seriously, but was known to use profanity and raise his voice when he reprimanded employees. There was no record of any prior confrontations or other problems existing between Irvine and Defendant.
On Friday, 4 November 2016, Jonathan Daigle, an employee at the heavy equipment shop, drove a motor grader to the pressure washing station to be cleaned. When he parked the motor grader, Daigle lowered the blade to the ground, which caused the wheels to lift off of the ground. Defendant believed Daigle had raised the wheels on purpose to cause Defendant to fall. He complained to Irvine. Irvine instructed Daigle to return and lower the wheels back onto the ground. Once Daigle returned to the wash area to adjust the blade, Defendant came up to the motor grader, yelled profanities at Daigle, and slapped the tire of the motor grader. Daigle reported this incident to Irvine.
The following Monday, 7 November 2016, Irvine drove the motor grader up to the pressure washing station after the repairs had been completed. As Irvine was walking away from the motor grader, it began to roll backward because the blade was not completely lowered to the ground. Defendant shouted out to Irvine that the motor grader was rolling. Irvine yelled at Defendant that he had not wanted the blade down and wheels raised.
Defendant walked toward Irvine and began to assault him. Defendant stated he pushed Irvine, and then he "snapped" and "started beating the hell out of him." A surveillance camera captured a 29-second portion of the assault. The recording showed Defendant striking Irvine eight times while Irvine was down on the ground. Various witnesses also observed some of the assault from partially obstructed views.
Irvine's fiancé observed Defendant "stomp" on Irvine three times, and heard Defendant yell, "I'm a man. I'm not a boy. You're not going to talk to me like them other boys." Defendant was wearing black rubber work boots at the time of the assault.
A company contractor heard Defendant yelling at Irvine about the way he had addressed him, and heard Irvine say, "I'm sorry. I'm sorry." Another contractor heard Irvine make sounds consistent with someone being kicked in the stomach, and also saw Defendant making motions consistent with the act of kicking someone. The contractor heard Defendant yell at Irvine, "I told you I would whip your 'A', and I kill you. I told you if you hollered at me like that again, I'd kill you."
The contractor approached Irvine and Defendant, and Defendant backed up. Irvine was laying on his side on the ground, and employees assisted in sitting him up on some equipment. Irvine complained of problems with his vision and experienced trouble breathing. An ambulance was called and arrived. The responding paramedic observed Irvine had "multiple injuries to the head and to the body."
Irvine was transported to the nearest trauma-level hospital. His condition deteriorated while being transported inside the ambulance. He was unconscious upon arrival at the hospital, approximately twenty minutes later, and died shortly after arrival.
Defendant was detained at the scene and transported to Alamance County Sheriff's Office. Defendant waived his Miranda rights and spoke with Detective Vaughn for approximately two-and-a-half hours. Defendant stated he "didn't want this to happen" and that he had "lost [his] temper."
Defendant stated he felt Irvine had been disrespectful and "insulted [his] intelligence." Defendant also believed Irvine was responsible for Daigle raising the tires of the motor grader off the ground the previous Friday. Defendant stated he "snapped" that day because Irvine "was talking sh[--]" and Defendant had lost his temper. Defendant acknowledges he had "rage built up," and that Irvine "hadn't done nothing that bad."
Defendant admitted he had hit Irvine about four times, and then hit him a few more times after Irvine had fallen onto the ground. Defendant also stated he had kicked Irvine "in the ass a couple of times" as he was rolling down the hill. Defendant further admitted Irvine had said "I'm sorry man, please" and Defendant had recognized that statement as a plea for mercy. Defendant paused his assaults on Irvine for a moment, but was "still hot" and "gave him a few more." After he was informed of Irvine's death, Defendant expressed remorse, stating he had no intention of beating a man to death. He also stated, "I meant to fight him."
An autopsy performed on Irvine's body revealed the cause of death was blunt force trauma to the spleen, which had caused internal bleeding. Irvine had a pre-existing enlarged spleen, possibly related to liver disease. He also suffered eight rib fractures, caused by blunt force trauma and consistent with a "minimum of three blows." Extensive damage was observed on the exterior of Irvine's body, including on his head, arms, elbows, and knees. The medical examiner stated that Irvine's head wounds were so severe that she had initially believed a head injury was the cause of his death.
Defendant was indicted for second-degree murder. At the charge conference, the trial court inquired of counsel what potential verdicts should be submitted to the jury. The State requested second-degree murder, with no lesser-included offenses. Defense counsel requested the inclusion of "involuntary manslaughter." The trial court only submitted the charge of guilty of second-degree murder and not guilty to the jury, who returned a verdict of guilty.
Consistent with the jury's verdict and specific written request, Defendant was sentenced in the mitigated range to an active term of 200 to 252 months of imprisonment. Defendant gave oral notice of appeal in open court.
II. Jurisdiction
An appeal of right lies with this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444 (2017).
III. Issue
Defendant argues the trial court plainly erred and abused its discretion by failing to also instruct the jury on the lesser-included offenses to second-degree murder.
IV. Standard of Review
Where a defendant fails to request an instruction for lesser-included offenses, his appeal is limited to plain error review. State v. Collins , 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993). "In deciding whether a defect in the jury instruction constitutes 'plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." State v. Odom , 307 N.C. 655, 661, 300 S.E.2d 375, 378-79 (1983) (citation omitted).
If preserved, this Court reviews the trial court's denial of a request for instruction on lesser-included offenses de novo . State v. Laurean , 220 N.C. App. 342, 345, 724 S.E.2d 657, 660 (2012).
V. Analysis
A. Jury Instructions
A defendant's right to have the jury instructed on all lesser-included offenses arises "only where there is evidence from which the jury could find that a lesser included offense had been committed." State v. Washington , 142 N.C. App. 657, 659-60, 544 S.E.2d 249, 251 (2001) (citation omitted). "When determining whether the evidence is sufficient to entitle a defendant to jury instructions on a defense or mitigating factor, courts must consider the evidence in the light most favorable to defendant." State v. Mash , 323 N.C. 339, 348, 372 S.E.2d 532, 537 (1988) (citations omitted).
Defendant's counsel requested the trial court to instruct the jury on the lesser-included offense of involuntary manslaughter. The trial court may have misunderstood her request.
THE COURT: Thank you. All right. Let me hear from the defense as to what you request the potential or what your suggestion is as to the potential verdicts to be submitted.
[Defense Counsel]: Your Honor, guilty and not guilty to second degree murder as well as involuntary manslaughter.
THE COURT: Okay. Thank you. First of all, I think we're all in agreement that it does provide -- even though you made a motion to dismiss, I'm not discounting that. We're just where we are. That submitting second degree murder, guilty or not guilty certainly goes to the jury. There's a difference on the voluntary manslaughter.
The trial court and defense counsel then engaged in a colloquy on the element of malice.
Whether the trial court misunderstood Defendant's requested instruction or not, both voluntary manslaughter and involuntary manslaughter are lesser-included offenses of second-degree murder, where the evidence warrants these instructions. See State v. Brown , 300 N.C. 731, 735, 268 S.E.2d 201, 204 (1980) ; State v. Barnes , 226 N.C. App. 318, 329, 741 S.E.2d 457, 465 (2013).
B. Voluntary Manslaughter
"Murder in the second degree is the unlawful killing of a human being with malice but without premeditation and deliberation. Voluntary manslaughter is the unlawful killing of a human being without malice and without premeditation and deliberation." State v. Wilkerson , 295 N.C. 559, 577-78, 247 S.E.2d 905, 915 (citations omitted). The distinguishing characteristic between second-degree murder and voluntary manslaughter is the State is not required to prove malice to support a conviction for voluntary manslaughter. Id. at 578, 247 S.E.2d at 916.
Malice may be established through evidence tending to show
(1) "express hatred, ill-will or spite"; (2) commission of inherently dangerous acts in such a reckless and wanton manner as to "manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief"; or (3) a "condition of mind which prompts a person to take the life of another intentionally without just cause, excuse, or justification."
State v. Coble , 351 N.C. 448, 450-51, 527 S.E.2d 45, 47 (2000) (citation omitted). Here, the trial court instructed the jury on the first and third types of malice as listed above.
An "adequate and reasonable" provocation, causing the defendant to kill another in the "heat of passion," tends to negate malice. State v. Forrest , 321 N.C. 186, 192, 362 S.E.2d 252, 256 (1987). Our Supreme Court has held "mere words or insulting language, no matter how abusive, can never be adequate provocation and can never reduce murder to manslaughter under the heat of passion doctrine." Id. (citation and internal quotation marks omitted).
The State's evidence was sufficient to establish malice under either the first or third type of malice. Further, Defendant admitted to having "snapped" purportedly because of the way Irvine had spoken to him. No matter his reputation for profanity or how abusive the language Irvine may have used, "mere words" would never be enough to negate malice to support the jury's conviction solely to manslaughter. Id .
Defendant argues there is no presumption of malice where a defendant killed a person using only his hands or feet, unless the victim was a child or was disabled in some way. Defendant cites State v. Lang , 309 N.C. 512, 525-26, 308 S.E.2d 317, 324 (1983). The issue on appeal in Lang was whether it was error for the jury instructions to allow the jury to infer malice based on the defendant's kicking or striking the victim:
If the state proves, beyond a reasonable doubt, or if it's admitted that the defendant intentionally kicked, cut or struck Frances May Pack, thereby proximately causing Miss Pack's death, you may infer first that the killing was unlawful and second, that it was done with malice. But, you are not compelled to do so. You may consider this along with other facts and circumstances in determining whether the killing was unlawful and whether it was done with malice.
Id. at 524, 308 S.E.2d at 323.
Lang is inapplicable in this case. Here, the trial court instructed:
Malice means not only hatred, ill will, or spite, as it is ordinarily understood -- to be sure that is malice -- but it also means that condition of the mind which prompts a person to take the life of another intentionally or intentionally inflict serious bodily harm which proximately results in another's death.
The State presented Defendant's interview immediately following the incident, during which he clearly stated he had intended to fight Irvine. Defendant also acknowledged he had "beat[ ] the hell out of" Irvine. The surveillance video, witnesses' testimonies, and multiple injuries to Irvine tend to show and support the serious nature of the injuries Defendant inflicted.
Sufficient evidence supports a finding of malice. Defendant presented no evidence. Even when viewed in the light most favorable to Defendant, no evidence was presented to negate the State's showing of Defendant's malice. See State v. Allbrooks , --- N.C. App. ----, ----, 808 S.E.2d 168, 172 (2017).
The trial court did not err by not providing jury instructions for voluntary manslaughter. Defendant's argument is overruled.
C. Involuntary Manslaughter
"Involuntary manslaughter is the unlawful killing of a human being without malice, without premeditation and deliberation, and without intention to kill or inflict serious bodily injury." Wilkerson , 295 N.C. at 578, 247 S.E.2d at 915. "[W]hile involuntary manslaughter imports an unintentional killing, i.e., the absence of a specific intent to kill, it is ... accomplished by means of some intentional act." Id. at 582, 247 S.E.2d at 918.
No evidence supports a conclusion Defendant did not intend to assault Irvine. All of the evidence presented of the assault tends to show: (1) that Irvine was laying on the ground while Defendant kicked, struck, and stomped on him; (2) Defendant paused when Irvine was down and pleaded for mercy, but then resumed the assault; and, (3) Defendant's admission that he had intended to assault Irvine and to "kill you," supports a finding Defendant intended to inflict repeated and serious bodily injuries during his assaults on Irvine.
In State v. Wood , this Court found no error in the trial court's refusal to instruct the jury on involuntary manslaughter when the evidence tended to show the defendant stomped on the victim's face and kicked the victim in the face and the stomach while the victim was on the ground. 149 N.C. App. 413, 416-17, 561 S.E.2d 304, 307 (2002). Defendant attempts to put more weight on the fact the defendant in Wood also appeared to be happy and "high-fived" others present after the assault. Id. We find this argument unpersuasive. The length, manner, and nature and severity of the assaults, in both Wood and the case at bar, are "wholly inconsistent with involuntary manslaughter." Id.
Defendant attempts to place the cause of Irvine's death on his enlarged spleen, asserting that his assaults and blows would not have killed Irvine but for his pre-existing condition. However, it has long been held that a victim's pre-existing condition does not negate or lessen the criminal responsibility of an assailant when an unlawful act causes or hastens the victim's death. State v. Luther , 285 N.C. 570, 575, 206 S.E.2d 238, 241-42 (1974).
No evidence exists from which a jury could have found Defendant guilty of the lesser included offense of involuntary manslaughter. Defendant's argument is overruled.
VI. Conclusion
The evidence presented at Defendant's trial does not support submission of manslaughter to the jury. No evidence indicates Defendant acted without malice, or negates a finding of malice, nor does any evidence support a conclusion that Defendant did not intend to inflict serious bodily injury or kill Irvine. Any difficulty the jury may have had in reaching a verdict was not a result of error in the trial court's instructions.
An instruction for a lesser included offense is only appropriate upon request and where evidence exists to support submission of the lesser included offense. State v. Hamilton , 132 N.C. App. 316, 321, 512 S.E.2d 80, 84 (1999). "The mere possibility that a jury might reject part of the prosecution's evidence does not require submission of a lesser included offense." Id.
We find no error, and certainly no plain error, in the trial court's decision to only instruct the jury on second-degree murder or not guilty, the only charge supported by the evidence. Defendant has failed to show any prejudice under plain error review to award a new trial. Defendant received a fair trial, free from prejudicial errors, and despite a lengthy prior criminal record, was sentenced in the mitigated range. It is so ordered.
NO ERROR.
Report per Rule 30(e).
Judges STROUD and ARROWOOD concur.