STATE OF NORTH CAROLINA v. BARRY DEAN LINER, DEFENDANT

No. 8915SC888

(Filed 5 June 1990)

**1. Homicide § 21.7 (NCI3d) — second degree murder — furnishing inherently dangerous drugs — evidence of malice — sufficient**

The trial court did not err in a murder prosecution based on defendant's furnishing drugs to the victim by denying defendant's motion to dismiss based on the contention that the state did not produce sufficient evidence of malice or intent. The malice necessary to support a conviction for second degree murder does not necessarily mean an actual intent to take human life, and the evidence in this case tends to show that defendant supplied the drugs to the victim with the knowledge that the drugs were inherently dangerous due to the fact that two others had both become violently ill after using the drugs in defendant's presence.

**Am Jur 2d, Homicide §§ 229, 425.**

**2. Criminal Law § 687 (NCI4th) — murder — requested instructions refused — substance given**

There was no prejudicial error in a murder prosecution arising from the furnishing of drugs where the trial court refused to charge the jury in accordance with defendant's written requests for instructions as to the definition of intent and proximate cause but the instructions given were clearly sufficient and adequately reflected the substance of the defendant's requested instructions.

Am Jur 2d, Homicide §§ 496, 497.

3. **Witnesses § 1 (NCI3d) — murder — witness with mental and drug problems — competent**

The trial court did not err in a murder prosecution arising from the furnishing of drugs by finding a state's witness competent despite defendant's contention that the witness was suffering from paranoid schizophrenia, was manic depressive, had been under a mental health clinic doctor's care for five or six years, and was a walking drug store. The witness testified on voir dire that his medical condition did not affect his ability to remember events, testified that he was currently taking medication for his mental illness, and provided a detailed account of a prior incident in which defendant had furnished the same drugs to another person who had then become violently ill.

Am Jur 2d, Homicide § 537; Witnesses §§ 80, 83.

4. **Criminal Law § 34.6 (NCI3d) — murder — furnishing drugs — prior incident — admissible**

The trial court did not abuse its discretion in a prosecution for murder arising from the furnishing of dangerous drugs by allowing the jury to consider testimony about another incident in which defendant supplied the same drugs to another party who suffered a near fatal overdose. The testimony at issue here clearly established that defendant knew the drugs he gave to the victim were extremely dangerous because he had given the same drugs to another person just eight days earlier and had observed that person overdose on the drugs at that time.

Am Jur 2d, Evidence § 323.

5. **Homicide § 28.8 (NCI3d) — murder — furnishing of drugs — accident or misadventure**

The trial court did not err in a murder prosecution arising from the furnishing of drugs by not instructing the jury on accident and misadventure where defendant intentionally provided the drugs to the victim and defendant was with the victim when the drugs were consumed.

Am Jur 2d, Homicide §§ 112, 514.

**6. Homicide § 30.3 (NCI3d) — murder — involuntary manslaughter not submitted — waiver by defendant**

> The trial court did not err in a murder prosecution arising from the furnishing of drugs by not submitting involuntary manslaughter as a possible verdict where the record affirmatively discloses that defendant knowingly, intelligently, and voluntarily waived any right he had to have the judge submit to the jury the possible verdict of involuntary manslaughter. A defendant who knowingly, intelligently, and voluntarily waives his right to have the trial judge submit possible verdicts of lesser included offenses and instructions thereon may not thereafter assign as error on appeal the judge's failure to submit such possible verdicts of lesser included offenses even though the evidence at trial gave rise to possible verdicts of the lesser included offenses.

**Am Jur 2d, Homicide §§ 530, 531.**

APPEAL by defendant from *Hight (Henry W., Jr.), Judge.* Judgment entered 10 February 1989 in Superior Court, ALAMANCE County. Heard in the Court of Appeals 9 May 1990.

Defendant was charged in a proper bill of indictment with the murder of John Thomas Jordan, Jr. in violation of G.S. 14-17.

The evidence presented at trial tends to show the following: On 30 September 1988, defendant assisted Mr. W. S. Gardner, pharmacist and operator of the Medical Village Apothecary in Burlington, N.C., in cleaning out the basement of a house on Beaumont Avenue where Gardner had stored old and out of date drugs including some Class II controlled substances — cocaine, Dilaudid, and morphine. On this date, Gardner, defendant, and defendant's girlfriend went to the house on Beaumont Avenue, and Gardner unlocked the building and told defendant to start moving out boxes of drugs from the basement while he and defendant's girlfriend went to get a truck to take the drugs to the dump where they would be destroyed. Gardner and defendant's girlfriend returned with the truck approximately thirty minutes later and found defendant in the basement of the house putting merchandise outdoors to be loaded onto the truck. At this time, Gardner pointed out a box of Schedule II drugs to defendant and stated, "We're not going to put these on the truck. We're going to handle this differently." Gardner then put the box of Class II drugs into his

STATE v. LINER

[98 N.C. App. 600 (1990)]

van and locked it intending to return them to the drug store and destroy them there. After taking the remaining drugs to the dump, Gardner and defendant got into the van and went to the drug store. At the store, they proceeded to pour the Class II drugs into an empty box. Some of the drugs had crystallized, however, and Gardner realized that he would have to do something else with them. Since it was getting late, Gardner decided to destroy the drugs the next day and proceeded to take defendant home. Gardner then placed the drugs in his storage building. Gardner did not give any of the drugs to defendant, nor did he observe defendant take any of the drugs. Following defendant's arrest, however, defendant admitted to Gardner that he had taken three bottles containing Dilaudid and cocaine.

The next day, Paul David Barbee went to defendant's apartment, and defendant told him "he had got ahold of some drugs and that we was going to do a little bit of them." Defendant then showed Barbee a small suitcase containing several vials labeled Dilaudid hydrochloride, morphine sulphate, cocaine hydrochloride and Demerol. Defendant told Barbee that he had been helping Gardner throw away some drugs "and he thought he would get some so that we could turn trips to get high."

Later that evening, Steve Dixon came to defendant's apartment. Dixon saw the drugs setting on the table and produced a hypodermic needle. Defendant then took a bottle of Dilaudid hydrochloride from the suitcase, and Dixon filled the syringe with Dilaudid powder hydrochloride and added some water. While defendant was sitting beside him, Dixon proceeded to use the needle to inject the mixture into the vein of his arm. Dixon then passed out, turned deathly white, and stopped breathing. Dixon's heart had stopped beating, and defendant hit him on the chest to get his heart started. Barbee administered mouth-to-mouth resuscitation, and the rescue squad was called. Defendant and Barbee hid the drugs and the syringe outside defendant's apartment before the rescue squad arrived. Dixon later recovered from the overdose.

One week later, Barbee returned to defendant's apartment. On this occasion, defendant gave Barbee some of the Dilaudid which he ingested. Barbee became very ill after taking the Dilaudid, and told defendant that he "wasn't going to do anymore, that it was bad."

The following day, on 9 October 1988, defendant and Barbee went to the home of the victim, John Thomas Jordan, Jr. (hereinafter

"Tommy Jordan"). Jordan told defendant that he wanted to do some cocaine, and defendant produced a pharmaceutical bottle from his pocket which contained some cocaine. Jordan and defendant snorted all the cocaine which was in the bottle, and when the bottle was empty, Jordan filled the bottle with water and drank from it. Defendant then produced a bottle of Dilaudid hydrochloride, and defendant and Jordan began snorting the Dilaudid hydrochloride up their noses. Jordan snorted the drug up his nose at least five times. Defendant told Jordan that this was the same drug that Steve Dixon had "ODed" on and that it was very potent. Jordan, however, continued snorting the drug.

Shortly after midnight that same day, Todd Jordan, the victim's brother and an Air Force flight surgeon medical technician, arrived at Tommy's house. Upon his arrival, Todd found his brother, Tommy, passed out in the bedroom. At the request of his brother's girlfriend, Todd went into the bedroom to check on his brother. Todd found that Tommy was breathing abnormally so he picked his brother up and carried him to the couch where he stabilized his brother's breathing. Todd continued to monitor his brother, but fell asleep. He awoke at approximately 5:30 the next morning to find that Tommy had stopped breathing and had no pulse. Todd called the paramedics and administered CPR but failed to get any response.

Tommy Jordan was pronounced dead at the emergency room at 6:14 a.m. on 10 October 1988. The physician concluded that Tommy had been dead for at least thirty minutes. An autopsy was performed on the victim's body later that same day, and the cause of death was determined to be a combination of cocaine and hydromorphone poisoning.

The jury found defendant guilty of second degree murder. From a judgment imposing a prison sentence of fifteen years, defendant appealed.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Steven F. Bryant, for the State.*

*Daniel H. Monroe for defendant, appellant.*

HEDRICK, Chief Judge.

[1] In his first assignment of error, defendant contends "[t]he trial court erred prejudicially in denying defendant's motions to dis-

miss . . . ." In support of his contention, defendant argues "[t]he State produced not a scintilla of evidence of malice by Defendant towards Tommy Jordan, nor did it show the 'generalized', as opposed to 'specific' intent to kill required for a conviction of second degree murder to stand." We disagree.

Our Courts have long held that the malice necessary to support a conviction for second degree murder "does not necessarily mean an actual intent to take human life." *State v. Trott*, 190 N.C. 674, 679, 130 S.E. 627, 629 (1925). However, "[w]hile an intent to kill is not a necessary element of second degree murder, the crime does not exist in the absence of some intentional act sufficient to show malice and which proximately causes death." *State v. Wilkerson*, 295 N.C. 559, 580, 247 S.E.2d 905, 917 (1978). Recently, this Court held that malice "denotes a wrongful act intentionally done without just cause or excuse [which demonstrates] . . . a willful disregard of the rights of others." *State v. Vance*, 98 N.C. App. 105, 390 S.E.2d 165 (1990), *quoting State v. Wilkerson* at 578, 247 S.E.2d at 916. Furthermore, malice "may be inferential or implied, instead of positive, as when an act which imports danger to another is done so recklessly or wantonly as to manifest depravity of mind and disregard of human life." *State v. Trott* at 679, 130 S.E.2d at 629.

In the present case, the evidence tends to show that defendant supplied the drugs to the victim, Tommy Jordan, with the knowledge that the drugs were inherently dangerous due to the fact that Steve Dixon and Paul David Barbee had both become violently ill after using the drugs in defendant's presence. Clearly, this was sufficient to establish "a wrongful act intentionally done without just cause or excuse" demonstrating "a willful disregard of the rights of others." Thus, considering the evidence in the light most favorable to the State, the jury could have reasonably inferred that defendant acted with malice in supplying the drugs to the victim. Therefore, we hold the trial judge did not err in denying defendant's motions to dismiss.

[2] Defendant next contends "[t]he trial court erred prejudicially in failing to charge the jury in accordance with defendant's written requests for instructions, specifically as to the court's definition of 'intent' and 'proximate cause.'" This argument is without merit.

Where the judge's charge fully instructs the jury on all the substantive areas of the case, and defines and applies the law

thereto, it is sufficient. *State v. McNeil*, 47 N.C. App. 30, 266 S.E.2d 824, *disc. rev. denied and appeal dismissed*, 301 N.C. 102, 273 S.E.2d 306 (1980). "[T]he court is not required to read the requested instruction verbatim." *State v. Greene*, 324 N.C. 1, 17, 376 S.E.2d 430, 440 (1989). Although a trial judge is not required to give requested instructions verbatim, he is required to give the requested instruction at least in substance if it is a correct statement of the law and supported by the evidence. *State v. Corn*, 307 N.C. 79, 296 S.E.2d 261 (1982).

We have reviewed Judge Hight's instructions to the jury and find them to have been clearly sufficient and to have adequately reflected the substance of defendant's requested instructions. Thus, we hold the trial judge did not err prejudicially in refusing to give defendant's requested instructions verbatim.

[3] In his third and fourth contentions, defendant asserts that the trial court erred in finding the State's witness Paul David Barbee to be competent and in allowing his testimony concerning a previous occasion upon which defendant provided drugs to a third person to be considered by the jury.

With respect to the competency of a particular person to be a witness, G.S. 8C-1, Rule 601 provides in pertinent part:

(a) Every person is competent to be a witness except as otherwise provided in these rules.

(b) A person is disqualified to testify as a witness when the court determines that he is (1) incapable of expressing himself concerning the matter as to be understood, either directly or through interpretation by one who can understand him, or (2) incapable of understanding the duty of a witness to tell the truth.

Our Supreme Court set forth the standard for review on this issue stating:

The issue of the competency of a witness to testify rests in the sound discretion of the trial court based upon its observation of the witness (citation omitted). Absent a showing that a trial court's ruling as to competency could not have been the result of a reasoned decision, it will not be disturbed on appeal.

*State v. Rael*, 321 N.C. 528, 532, 364 S.E.2d 125, 128 (1988).

In the present case, defendant asserts that the trial judge should not have found Barbee competent to be a witness because (1) "[h]e was suffering from 'paranoiod [sic] schizophrenia, manic depressive', and had been under a Mental Health Clinic doctor's care for five or six years," and (2) [he] was a walking drug store." During *voir dire*, however, Barbee testified that his medical condition did not affect his ability to remember events and that he was currently taking medication for his mental illness. Barbee also provided a detailed account of the events which transpired on 1 October 1988. Based upon the evidence presented during *voir dire* and his "opportunity to view the witness and listen to his answers to the questions," Judge Hight found Barbee competent to testify. On appeal, defendant has failed to show that Judge Hight's ruling "could not have been the result of a reasoned decision," and therefore, we will not disturb it on appeal.

[4] Likewise, we will not disturb the trial judge's ruling allowing the jury to consider Barbee's testimony about the events of 1 October 1988 when defendant supplied the same drugs which caused the victim's death to Steve Dixon resulting in his near fatal overdose.

Rule 404(b) of the North Carolina Rules of Evidence provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

Furthermore, the decision to admit evidence under this rule rests in the discretion of the court upon consideration of the facts supporting relevancy. *State v. Wortham*, 80 N.C. App. 54, 341 S.E.2d 76 (1986).

The testimony at issue here clearly established that defendant knew the drugs he gave to the victim were extremely dangerous because he had given the same drugs to another person just eight days earlier, and defendant had observed that person overdose on the drugs at that time. In allowing Barbee's testimony to be admitted, Judge Hight stated:

The Court is going to find that the evidence is offered not for the purpose of proving that he acted in conformity with conduct on October 9, 1988, with the conduct of October

1 of 1988, but, however, is admissible to show knowledge as set forth in Rule 404(b).

The Court has then taken the balancing test as required by Rule 403 and finds that the evidence is more probative on the point to be shown than any other evidence and that it is quite relevant to the trial of this particular matter and it's [sic] relevance outweighs any prejudice to the defendant.

The record clearly discloses that Judge Hight did not abuse his discretion in admitting Barbee's testimony concerning the prior acts of defendant in supplying drugs to a third person. Therefore, we find no prejudicial error in the trial judge's findings with respect to the competency of the witness to testify, or in his decision to allow the jury to consider his testimony. These assignments of error are overruled.

[5] Next, defendant argues the trial court erred in not instructing the jury on accident and misadventure. Assuming *arguendo* that this issue is properly raised on appeal, we find the trial court did not err in not instructing the jury on accident. Defendant intentionally provided the drugs to the victim, and defendant was with the victim when the drugs were consumed. This contention is without merit.

[6] Finally, defendant contends the trial court erred in not submitting involuntary manslaughter as a possible verdict and in not instructing the jury thereon. Defendant argues G.S. 15A-1232 requires the trial judge to "explain the law arising on the evidence" of each case, and he cites numerous cases in support of this argument.

With respect to this issue the record discloses the following:

MR. HUNT: . . . If I might ask the Court to inquire — I don't know if this is proper, but I discussed lesser included offenses also with my client, as to whether or not he wanted me to request that, and he has indicated, and I have a signed statement to that effect, that he is aware of the circumstances and has elected only to request that the Court submit it on second degree murder or not guilty, and I just wanted the record to reflect that, and if the Court wanted to inquire, I have no objection.

COURT: Mr. Liner, if you would stand, please, sir.

Mr. Liner, you have conferred with your attorney, Mr. Hunt, as to your election not to request this Court submit to the jury the lesser included offenses of voluntary manslaughter and involuntary manslaughter, is that correct?

MR. LINER: Yes, your Honor.

COURT: Has he explained to you those charges?

MR. LINER: Yes.

COURT: . . . and you have asked him any questions you desired?

MR. LINER: Yes, sir.

COURT: And is it your decision after conferring with your attorney not to request this Court to instruct on involuntary manslaughter and voluntary manslaughter?

MR. LINER: Yes, your Honor.

The cases cited by defendant in support of his argument, *State v. Dooley*, 285 N.C. 158, 203 S.E.2d 815 (1974), *State v. Ferrell*, 300 N.C. 157, 265 S.E.2d 210 (1980), *State v. Little*, 51 N.C. App. 64, 275 S.E.2d 249 (1981), and *State v. Wallace*, 309 N.C. 141, 305 S.E.2d 548 (1983), simply stand for the proposition that the trial judge is required to submit possible lesser included offenses as verdicts when the evidence gives rise to such an offense. These cases, however, do not stand for the proposition that defendant cannot waive his right to have verdicts of lesser included offenses submitted to the jury even though the evidence might give rise to such verdicts. The State cites *State v. Moore*, 275 N.C. 198, 166 S.E.2d 652 (1969), and *State v. Hucks*, 323 N.C. 574, 374 S.E.2d 240 (1988), in support of its contention that defendant can waive certain constitutional rights. These cases cited by the State are not applicable.

We hold that a defendant who knowingly, intelligently, and voluntarily waives his right to have the trial judge submit to the jury possible verdicts of lesser included offenses and instructions thereon may not thereafter assign as error on appeal the judge's failure to submit such possible verdicts of lesser included offenses even though the evidence at trial gave rise to possible verdicts of lesser included offenses. In the present case, the record affirmatively discloses that defendant knowingly, intelligently, and volun-

tarily waived any right he had to have the judge submit to the jury the possible verdict of involuntary manslaughter. Defendant advised the judge that he knew the consequences of his request not to have the possible verdicts of lesser included offenses submitted to the jury. He also told the judge that he had conferred with his counsel who had explained the charges to him and answered any questions that he had. This assignment of error has no merit.

Defendant received a fair trial free from prejudicial error.

No error.

Judges JOHNSON and EAGLES concur.