STATE OF NORTH CAROLINA
v.
RONALD WAYNE SPANN.
No. COA09-503.
Court of Appeals of North Carolina.
Filed January 5, 2010.
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Laura E. Crumpler, for the State.
Russell J. Hollers, III, for defendant-appellant.
CALABRIA, Judge.
Ronald Wayne Spann ("defendant") appeals judgments entered upon jury verdicts finding him guilty of first degree rape and indecent liberties. We find no error.

I. Facts
D.H. is the victim in this case. Defendant was the live-in boyfriend of D.H.'s mother ("Michelle"). Michelle and defendant started dating in 1997, when D.H. was five years old. Between 1997 and 2007, defendant and D.H. had multiple sexual encounters. According to D.H., these encounters included, inter alia, defendant touching her vagina, masturbation, and two episodes of vaginal intercourse.
In March 2007, D.H.'s school counselor discovered that D.H. was cutting her arms. When confronted, D.H. told the counselor about defendant's sexual encounters with her. When Michelle learned of the allegations, she left defendant and took D.H., along with the rest of her family, to a women's shelter.
Detective Shelly Hartley ("Det. Hartley") of the Caldwell County Sheriff's Department investigated D.H.'s allegations. Det. Hartley visited the family home and searched an "outbuilding" where D.H. claimed defendant had molested her in a chair. According to D.H., when she went to the outbuilding to help defendant feed the family dogs, defendant touched her vagina through her clothing, tried to get her pants down, and tried to get D.H. on top of him while defendant was sitting in the chair. Det. Hartley discovered a pornographic magazine and a chair in the outbuilding. When questioned by Det. Hartley, defendant denied D.H.'s allegations.
Defendant was subsequently arrested and indicted for two counts of first degree rape of a child and four counts of indecent liberties with a child. Defendant was tried in Caldwell County Superior Court on 11 August 2008. On 15 August 2008, the jury returned verdicts of guilty to all of the charges. Defendant was given two consecutive active sentences: 1) a minimum of 288 months to a maximum of 355 months for the two convictions for first degree rape of a child; and 2) a minimum of 19 months to a maximum of 23 months for one of the convictions for indecent liberties with a child. Both of these sentences were to be served in the North Carolina Department of Correction. On the remaining indecent liberties convictions, defendant was sentenced to five years of supervised probation after the completion of his active sentences. Defendant appeals.

II. Expert Testimony
Defendant argues that the trial court erred by allowing two of the State's expert witnesses to vouch for D.H.'s credibility by implicating defendant as the perpetrator of sex crimes against D.H. We disagree.
No objections were made to this testimony at trial and therefore this assignment of error is reviewed under the plain error standard. State v. Locklear, 172 N.C. App. 249, 259, 616 S.E.2d 334, 341 (2005).
Plain error is error so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached. We find plain error only in exceptional cases where, after reviewing the entire record it can be said the claimed error is a fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.
State v. Wilkerson, ___ N.C. ___, ___, ___ S.E.2d ___, ___ (2009)(internal quotations, citations and emphasis omitted).
In a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has in fact occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility. However, an expert witness may testify, upon a proper foundation, as to the profiles of sexually abused children and whether a particular complainant has symptoms or characteristics consistent therewith.
State v. Stancil, 355 N.C. 266, 266-67, 559 S.E.2d 788, 789 (2002) (emphasis and citations omitted). In the instant case, social worker Jenny Smith ("Ms. Smith") testified that, in her expert opinion, D.H. was suffering from major depressive disorder and post traumatic stress disorder. Ms. Smith also testified about D.H.'s disclosures to her that led to these diagnoses. These disclosures included a recurring dream about defendant that frightened D.H.
Dr. Debrah Moore ("Dr. Moore") testified about the characteristics of sexual abuse victims. Dr. Moore never met with D.H. She did, however, testify about which characteristics associated with sexual abuse victims were consistent with D.H.'s behavior, based upon materials provided to her by the State. On cross-examination, Dr. Moore acknowledged that D.H.'s behaviors could have other causes, that D.H. could have been exaggerating, and that children sometimes falsely report sexual abuse.
At no time in their respective testimonies did either Ms. Smith or Dr. Moore vouch for the truthfulness of D.H. or otherwise comment on D.H.'s credibility. Neither Ms. Smith nor Dr. Moore testified that D.H. had been sexually abused by defendant or anyone else. Dr. Moore specifically acknowledged that she could not assess D.H.'s credibility because she had never met with her. Because there was no expert testimony that may be construed as vouching for D.H.'s credibility, the trial court did not err by allowing the expert opinions of both Ms. Smith and Dr. Moore. This assignment of error is overruled.

III. Impermissible Testimony
Defendant argues that the trial court erred by allowing the State to introduce evidence of defendant's uncharged bad acts. We disagree. Because no objections were made at trial to any of the testimony complained of by defendant, we again review for plain error.

A. Hearsay
Defendant first argues that testimony of defendant's uncharged bad acts by Department of Social Services ("DSS") Investigator Amber Detter ("Ms. Detter") and Dr. Cynthia Brown ("Dr. Brown") was inadmissible hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2008).
Ms. Detter testified that D.H. had told her about masturbating and performing fellatio on defendant and about defendant digitally penetrating and performing cunnilingus on D.H. Dr. Brown also testified that D.H. had told her about the aforementioned digital penetration, fellatio, and cunnilingus. Defendant's charges were not based upon any of these alleged events.
Rule 803(4) provides an exception to the hearsay rule for "[s]tatements made for purposes of medical diagnosis or treatment...." N.C. Gen. Stat. § 8C-1, Rule 803(4) (2008). In the instant case, the statements made by D.H. were read into evidence from medical records from Mission Children's Clinic ("Mission"). The statements were part of an initial interview with D.H. by Mission personnel when she first went to Mission for treatment. At the time of this initial interview, Ms. Detter was in the room with D.H. The interview was followed by a physical examination of D.H. Dr. Moore used the information from the interview and the physical exam to assist in preparing her diagnosis of D.H. The statements of D.H., read into the record by Dr. Brown, were clearly for purposes of medical diagnosis or treatment and therefore fell under that exception to the hearsay rule.
Ms. Detter's testimony was not based upon the interview of D.H. at Mission, but was instead based upon Ms. Detter's own initial interview of D.H. The statements of D.H., repeated by Ms. Detter, were not made in a medical setting and therefore Ms. Detter's testimony cannot be admitted under the medical treatment or diagnosis exception to the hearsay rule. However, this Court has previously held that out of court statements that "explained why. . . DSS commenced an investigation and. . . offered to rebut the implication that the female child fabricated abuse allegations" were not offered to prove the truth of the matter asserted and therefore did not constitute inadmissible hearsay. In re Mashburn, 162 N.C. App. 386, 390, 591 S.E.2d 584, 588 (2004). The statements of D.H., testified to by Ms. Detter, were offered for these same purposes and therefore the trial court did not err by admitting this testimony.

B. Character Evidence
Defendant also argues that the statements by Ms. Detter and Dr. Brown above, as well as additional testimony by other witnesses for the State, constituted inadmissible character evidence that should have been excluded. Rule 404(b) of the North Carolina Rules of Evidence states, in relevant part:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.
N.C. Gen. Stat. § 8C-1, Rule 404(b) (2007). The admissibility of 404(b) evidence is "subject to the weighing of probative value versus unfair prejudice mandated by Rule 403." State v. Agee, 326 N.C. 542, 549, 391 S.E.2d 171, 175 (1990). "Rule 404(b) is one of `inclusion of relevant evidence of other crimes . . . subject to but one exception requiring its exclusion if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.'" State v. Faircloth, 99 N.C. App. 685, 689, 394 S.E.2d 198, 201 (1990) (quoting State v. Coffey, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990)). "[S]uch evidence is admissible as long as it is relevant to any fact or issue other than the defendant's propensity to commit the crime." State v. Aldridge, 139 N.C. App. 706, 714, 534 S.E.2d 629, 635 (2000).
In the instant case, four witnesses for the State testified to several prior acts of misconduct by defendant, including: inappropriate touching, drinking alcohol, smoking marijuana, making sexual gestures, beating and choking D.H., watching pornographic movies, and engaging in fellatio, cunnilingus, and masturbation with the victim.
For the relevance of testimony regarding uncharged prior sexual activities, our Supreme Court has noted,
evidence of prior sex acts may have some relevance to the question of defendant's guilt of the crime charged if it tends to show a relevant state of mind such as intent, motive, plan, or opportunity. Such evidence is deemed admissible and not violative of the general rule prohibiting character evidence.
State v. Boyd, 321 N.C. 574, 577, 364 S.E.2d 118, 119 (1988) (internal citations omitted). "[T]he ultimate test for determining whether such evidence is admissible is whether the incidents are sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of N.C.G.S. § 8C-1, Rule 403." Id. (citation omitted). "Our Supreme Court has been very liberal in admitting evidence of similar sex crimes in construing the exceptions to the general rule." State v. Thaggard, 168 N.C. App. 263, 270, 608 S.E.2d 774, 780 (2005) (citations omitted).
In the instant case, the uncharged sexual acts testified to by D.H. and repeated by witnesses who interviewed D.H., all involved the same victim, D.H. Therefore, these uncharged acts were relevant to establish defendant's intent, defendant's common plan or scheme to engage in sexual abuse of D.H., and defendant's opportunity to engage in sexual abuse of D.H. These uncharged acts were either the same or very similar to the offenses for which defendant was on trial. They were occurring at the same time as the charged sexual acts and therefore cannot be considered too remote in time to be relevant. The trial court did not err by allowing testimony regarding uncharged sexual acts in these circumstances.
The testimonies of D.H. and Michelle that refer to acts other than those that led to the charges are more problematic for the purposes of Rule 404(b). D.H. testified that defendant would beat her with a belt, choke her, throw things at her, and slap her in the face when they argued. D.H. also testified that defendant had a shed where he would get drunk and smoke pot and referred to defendant as a "pothead." Michelle testified that defendant was "always drinking and smoking marijuana constantly."
However, even if we were to assume, arguendo, that none of the character evidence regarding defendant's alleged physical abuse and drug and alcohol abuse introduced by any of the State's witnesses was admissible, defendant has not met the burden for demonstrating plain error. Although it is true, as defendant argues, that the outcome of this case was dependent, in part, upon defendant's credibility, the determinative issue for the jury to decide in order to convict defendant was whether or not D.H.'s testimony was credible. There was significant evidence presented that bolstered D.H.'s credibility. Dr. Moore, an expert, testified that D.H. exhibited the characteristics of a sexual abuse victim. Det. Hartley testified that during her investigation she discovered pornographic materials and a chair in an outbuilding where D.H. alleged that abuse had occurred in that same chair. Additionally, testimony from D.H.'s relatives, Ms. Smith, and therapist Carmen McGee all corroborated D.H.'s version of events. In light of this evidence, it cannot be said that any impermissible evidence introduced regarding defendant's character "tilted the scales" or that the jury probably would have reached a different verdict if the challenged testimonies had not been admitted by the trial court. This assignment of error is overruled.

IV. Jury Instructions
Defendant argues that the trial court erred by failing to instruct the jury on the offense of attempted statutory rape. We disagree.
The trial court specifically asked defendant's counsel if he wished to request an instruction on the charge of attempted statutory rape. Defendant's counsel responded: "My client would prefer not to have the attempt charge, Your Honor. And I have explained to him what that means and he says he would rather  it's up or down."
[A] defendant who knowingly, intelligently, and voluntarily waives his right to have the trial judge submit to the jury possible verdicts of lesser included offenses and instructions thereon may not thereafter assign as error on appeal the judge's failure to submit such possible verdicts of lesser included offenses even though the evidence at trial gave rise to possible verdicts of lesser included offenses.
State v. Liner, 98 N.C. App. 600, 609, 391 S.E.2d 820, 825 (1990). The transcript clearly indicates that defendant waived the attempt instruction knowingly, intelligently, and voluntarily. This assignment of error is without merit.

V. Sealed Records
Defendant finally argues that the trial court erred in failing to disclose to defendant material information contained in documents that were sealed by the trial court. "[T]he proper standard of review [for reviewing sealed documents from the trial court] is de novo." State v. Tadeja, 191 N.C. App. 439, 449, 664 S.E.2d 402, 410 (2008) (citation omitted).
If the trial court conducts an in camera inspection but denies the defendant's request for the evidence, the evidence should be sealed and placed in the record for appellate review. On appeal, this Court is required to examine the sealed records to determine if they contain information that is both favorable to the accused and material to either his guilt or punishment. If the sealed records contain evidence which is both "favorable" and "material," defendant is constitutionally entitled to disclosure of this evidence.
Id. at 449-50, 664 S.E.2d at 410 (internal quotations and citations omitted).
The trial court reviewed the sealed medical records of D.H. in camera and provided defense counsel with those documents that the trial court determined to be considered favorable and material to defendant. The remainder of the records were sealed and maintained for appellate review. Upon a thorough review of the remaining sealed records, we agree with the trial court and conclude that the sealed records that were not provided to defendant contain neither favorable nor material evidence for defendant. This assignment of error is overruled.

VI. Additional Assignment of Error
Defendant has failed to bring forth any argument regarding his remaining assignment of error. As such, we deem this assignment of error abandoned pursuant to N.C.R. App. P. 28(b)(6) (2008).
No error.
Judges ROBERT C. HUNTER and GEER concur.
Report per Rule 30(e).