**STATE v. BARNES**

[226 N.C. App. 318 (2013)]

STATE OF NORTH CAROLINA
v.
MICHAEL TRAVIS BARNES

No. COA12-278

Filed 2 April 2013

1. **Constitutional Law—right to confront witness—expert testimony—error cured—subsequent testimony**

      The trial court did not violate defendant's Sixth Amendment right to confront witnesses against him in a second-degree murder case by allowing the State's expert to give his opinion that the victim's death was caused by methadone toxicity based on the results of a toxicology report from the Chief Medical Examiner's Office. Even assuming arguendo that the trial court erred in allowing this testimony, any error was cured by the subsequent testimony and cross-examination of the doctor who performed the analysis that revealed methadone toxicity in the victim's blood.

2. **Evidence—expert testimony—sufficient notice—opportunity to cross-examine—right to discovery not violated—right to reasonable notice not violated**

      The trial court in a second-degree murder case did not violate defendant's statutory right to discovery or his constitutional right to reasonable notice of evidence by allowing the State to present the testimony of an expert toxicologist. Defendant had the toxicology report for four years, had the report reviewed by two independent experts, was afforded the opportunity to meet privately with the expert for an hour and twenty minutes prior to the *voir dire* hearing, and was afforded a full opportunity to cross-examine the witness on *voir dire*.

3. **Homicide—jury instructions—second-degree murder—involuntary manslaughter—sufficient evidence of reckless conduct**

      The trial court did not err in a second-degree murder trial by instructing the jury on the lesser offense of involuntary manslaughter. The evidence of reckless conduct supported the submission of both the charges of second-degree murder and involuntary manslaughter to the jury.

      Appeal by defendant from judgment entered 15 July 2011 by Judge R. Stuart Albright in Rockingham County Superior Court. Heard in the Court of Appeals 29 August 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Stanley G. Abrams, for the State.*

*Brock, Payne & Meece, P.A., by C. Scott Holmes, for defendant-appellant.*

STEELMAN, Judge.

Defendant's right of confrontation under the Sixth Amendment of the Constitution was not violated when an expert medical examiner testified that in his opinion the cause of death was methadone toxicity. The trial court did not err in admitting the testimony of the expert toxicologist where the State did not provide defendant with prior notice of its intent to call the witness. The trial court did not err in instructing the jury on the lesser charge of involuntary manslaughter.

## I. Factual and Procedural History

On 16 August 2006, Shane Cardwell (Cardwell) was found dead at his home at around 1:30 p.m. by his father. On the previous night, Michael Barnes (defendant) was with Cardwell and sold methadone to Cardwell.

As part of his investigation into Cardwell's death, Dr. Mark Jordan (Dr. Jordan), the local medical examiner, sent a specimen of Cardwell's blood to the Office of the Chief Medical Examiner of North Carolina in Chapel Hill for analysis. Dr. Jordan determined that Cardwell died of a methadone overdose.

Defendant was indicted for the second-degree murder of Cardwell. This matter came on for trial at the 11 July 2011 session of Criminal Superior Court for Rockingham County. During the course of the trial, the trial court allowed Dr. Jordan to testify that in his opinion the cause of Cardwell's death was methadone toxicity, and that his opinion was based upon the blood toxicology report from the Chief Medical Examiner's Office. Defense counsel objected to this testimony on the grounds that it violated defendant's Sixth Amendment right to confront the witnesses against him.

On cross-examination of Dr. Jordan, defense counsel raised the issue of whether the test showing methadone toxicity had been performed at the laboratory of the Chief Medical Examiner in Chapel Hill or at an out-of-state laboratory. Defense counsel also raised an issue as to whether Cardwell consumed Xanax on the night prior to his death. In order to clear up these issues, the State proposed to call Dr. Ruth

**STATE v. BARNES**

[226 N.C. App. 318 (2013)]

Winecker (Dr. Winecker), Chief Toxicologist in the Office of the Chief Medical Examiner, and Jarod Brown (Brown), a toxicologist in the Office of the Chief Medical Examiner who had performed the tests on Cardwell's blood. Defendant objected to this testimony on the grounds that he had not been given reasonable notice that the State intended to call these witnesses in violation of N.C. Gen. Stat. § 15A-903 and his constitutional right to notice. After hearing testimony from Dr. Winecker and Brown on *voir dire*, the trial court ruled that the State could call them as witnesses before the jury. The State only called Brown to testify. Brown testified that he personally performed the analysis of Cardwell's blood and that he found nicotine, methadone, and hydrocodone to be present. He further testified that he did not find Xanax to be present. The trial court limited the jury's consideration of Brown's testimony to it being the basis of Dr. Jordan's opinion testimony.

On 15 July 2011, the jury found defendant guilty of involuntary manslaughter. The trial court sentenced defendant to an active term of imprisonment of 21 to 26 months.

Defendant appeals.

## II.  Admission of Expert Opinion Testimony

In his first argument on appeal, defendant contends that the trial court erred and violated his Sixth Amendment right to confront witnesses against him by allowing the State's expert, Dr. Jordan, to give an opinion as to the cause of Cardwell's death and to testify concerning the results of the toxicology report. We disagree.

### A.  Standard of Review

This Court reviews alleged violations of constitutional rights *de novo. State v. Tate*, 187 N.C. App. 593, 599, 653 S.E.2d 892, 897 (2007). Under *de novo* review, this Court considers the matter anew and freely substitutes its own judgment for that of the trial court. *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008). If a defendant shows that an error has occurred, the State bears the burden of demonstrating the error was harmless beyond a reasonable doubt. N.C. Gen. Stat. § 15A-1443(b) (2011).

### B.  Analysis

During the course of the trial, Dr. Jordan testified that he examined the body of Cardwell. He collected blood and liver samples from Cardwell and sent them to the Office of the Chief Medical Examiner in Chapel Hill for analysis. At the time these samples were sent to the Office

of the Chief Medical Examiner, Dr. Jordan had not formed an opinion as to the cause of death. Upon his review of the results of the toxicology report together with his findings from the autopsy, Dr. Jordan formed an opinion that the cause of Cardwell's death was methadone toxicity. The trial court found that Dr. Jordan's testimony concerning the report was admitted "not for the truth of the matter asserted."

At trial, and now on appeal, defendant argues that the trial court deprived him of his constitutional right of confrontation by allowing Dr. Jordan to testify that he relied on the toxicology report in forming his opinion of the cause of death and to testify as to the results of the report. The issue, as discussed in the cases of *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177 (2004), *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 174 L. Ed. 2d 314 (2009), *Williams v. Illinois*, 132 S.Ct. 2221, 183 L .Ed. 2d 89 (2012), and *State v. Locklear*, 363 N.C. 438, 681 S.E.2d 293 (2009), is whether the proffered evidence was testimonial in nature, and whether the defendant had a prior opportunity to examine the declarant. *See Locklear*, 363 N.C. at 452, 681 S.E.2d at 304 (citing *Crawford*, 541 U.S. at 68, 158 L.Ed.2d. at 203).

Whether an expert witness's reliance upon laboratory reports prepared by others in formulating an opinion pursuant to Rule 703 of the North Carolina Rules of Evidence constitutes a violation of a criminal defendant's right to confrontation of witnesses against him under the Sixth Amendment of the United States Constitution is an evolving area of law. The caselaw from the United States Supreme Court and our North Carolina Supreme Court is not fully developed at this time. Based upon the facts of the instant case, we need not, and do not reach this issue. Even assuming *arguendo* that the trial court erred in allowing Dr. Jordan to testify as to the toxicology report, any error was cured by the subsequent testimony and cross-examination of Brown, who performed the analysis that revealed methadone toxicity in Cardwell's blood. We have discussed defendant's contentions that his counsel had inadequate time to prepare for this cross-examination in Section III of this opinion. We hold that since defendant had the opportunity to cross-examine Brown, the admission of Dr. Jordan's testimony concerning the toxicology report as part of the basis for his opinion of Cardwell's cause of death and the results of the report did not violate defendant's right of confrontation.

### III. Admission of Testimony of Expert Toxicologist

[2] In his second argument, defendant contends that the trial court violated his constitutional right to reasonable notice of evidence and his

statutory right to discovery by allowing the State to present the testimony of an expert toxicologist. We disagree.

### A.  Standard of Review

Possible violations of the statutory right to discovery are reviewed for an abuse of discretion. *State v. Cook*, 362 N.C. 285, 294-95, 661 S.E.2d 874, 880 (2008). An abuse of discretion only occurs when the trial court's ruling is "so arbitrary that it could not have been the result of a reasoned decision." *State v. Hayes*, 314 N.C. 460, 471, 334 S.E.2d 741, 747 (1985). When a trial court's "finding of fact are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal." *See State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011).

### B.  Analysis

After Dr. Jordan testified, the State proposed to call Dr. Winecker and Brown to testify concerning the toxicology analysis performed on Cardwell's blood by the Office of the Chief Medical Examiner of North Carolina. Defendant objected to this testimony on the grounds that it violated defendant's constitutional right to notice and N.C. Gen. Stat. § 15A-903 because defendant was not given adequate notice that the State intended to call these witnesses. Upon defendant's objection, the trial court conducted a *voir dire* hearing of these witnesses, heard argument from counsel, and made a detailed ruling containing findings of fact and conclusions of law. The relevant portions of that order are as follows:

> The Court's going to make the following findings: The pathologist in this case, Dr. Jordan, the State's witness who performed the autopsy of the victim in this case opined that the cause of death was Methadone toxicity. Court also finds that the toxicology report — specifically it's been identified as State's Exhibit No. 6[1] — was part of the autopsy and part of the basis for Dr. Jordan's opinion about the cause of death.
>
> Court finds that the defendant has been on notice of the toxicology report, its contents and its results for more than four years.
>
> Court also finds that the defendant has retained two independent experts, Dr. Donald Jason, which has been

---

1. Although the trial court refers to State's Exhibit No. 6 in its order, the toxicology report of Brown was not offered or received into evidence. During jury deliberations, the jury requested to see a copy of this report. This request was denied because State's Exhibit 6 had never been received into evidence.

**STATE v. BARNES**

[226 N.C. App. 318 (2013)]

reported to the Court . . . that he is a forensic pathologist, . . . the defendant has also retained an independent expert by the name of Dr. Alphonse Poklis, who was reported to the Court to be . . . a toxicologist.

Both of these independent experts obtained by the defendant conducted their own review of this case, including their own review of the toxicology report. Specifically, Dr. Jason's opinions are set forth in Court's Exhibit No. 1 . . . .

Also, I have a copy of Dr. Poklis' . . . report. . . . For lack of a better description, I call it the report. In it he doesn't necessarily state opinions, but he addresses some questions.

In Dr. Jason's report, he comes to the same conclusion that the State's witness, Dr. Jordan, came to and that was the cause of death was Methadone toxicity. Court finds that Dr. Jason did not question the validity of the toxicology report or of the results of the toxicology report, despite having every opportunity to do so.

Court makes the same findings with regard to Dr. Poklis. . . . He didn't question the validity of the toxicology report or the results of the toxicology report.

Court finds that through very capable cross-examination at trial, the defendant has raised questions about the contents of the toxicology report.

Court finds the State has determined that based on questions about the toxicology report raised through cross-examination that it is reasonably necessary to call Mr. Jarod Brown, who was . . . the forensic chemist who actually conducted the analysis . . . and Dr. Ruth Winecker, Mr. Brown's supervisor. Both work at the Office of the Chief Medical Examiner and that the State has determined it reasonably necessary to call those two witnesses to answer the questions raised through cross-examination.

The Court has ordered the State to provide certain records, whether relevant or not, requested by the defendant with respect to Mr. Brown and Dr. Winecker. The State has provided all of those records, with the exception

of raw data related to negative tests of cocaine, opiates and alcohol. . . . Dr. Winecker and Mr. Brown have, in fact, provided the raw data with regard to the Methadone, which, again, it is undisputed that is the cause of death of the victim in this case by both the State and the defense witness.

. . .[T]he Court finds that the State has produced all of the records with the exception of the raw data that I just previously itemized. Court finds the raw data that has not been produced is irrelevant, given the fact that it is undisputed about the cause of death in this case.

The Court further finds that the defendant has interviewed Mr. Jarod Brown and Dr. Ruth Winecker . . . for approximately one hour and 20 minutes, that the defense attorney did so on his own without interference from the State and that Mr. Brown and Dr. Winecker answered all of the defendant's questions, including any questions with respect to any documents that have been turned over to the defendant.

The Court further allowed the defendant to question both Mr. Jarod Brown and Dr. Ruth Winecker under oath after the defendant had reviewed the records that had been provided to the defendant and after the defendant has had the opportunity to speak with Mr. Brown and Dr. Winecker for . . . approximately one hour and 20 minutes. The defendant exercised his option to question Dr. Winecker under oath . . . in the absence of the jury. However, despite having the opportunity to question Mr. Brown under oath, the defendant declined to do so.

Court finds that the defendant has had a reasonable opportunity to ask questions of Mr. Jarod Brown and Dr. Ruth Winecker to discover and to analyze the proposed testimony of both Mr. Jarod Brown and Dr. Ruth Winecker.

Court finds the defendant has already had two experts in this case, Dr. Poklis and Dr. Jason again review the autopsy and toxicology report and, again, neither questioned the validity or results of the toxicology report and, again, Dr. Jason came to the same conclusion as the State's witness regarding the victim's cause of death. The Court finds the victim's cause of death is undisputed.

The Court finds that Dr. Jason, the defendant's expert witness, relied on State's Exhibit 6, the toxicology report, in forming his opinions as set forth in his letter dated June 20th, 2007 . . . .

The Court finds that the State is calling Mr. Brown and Dr. Ruth Winecker to explain in more detail the toxicology report, State's Exhibit No. 6, not to contradict the toxicology report . . . .

The Court finds that the defendant has already retained two experts and has the services of these experts since 2007 and has the opportunity to consult these experts . . . .

The Court has given the defendant broader and more comprehensive discovery regarding the testimony of Mr. Jarod Brown and Dr. Ruth Winecker than that normally allowed by either the Constitution or by the North Carolina General Statutes.

The Court finds that while not necessarily anticipated, there is no surprise to the defendant that the State is calling Mr. Jarod Brown or Dr. Ruth Winecker as witnesses about the very toxicology report that the defendant has known about for more than four years and about the very toxicology report that the defendant's own expert, Dr. Jason, has reviewed and used in his analysis in forming . . . his independent opinion about the cause of death.

Based on all those findings, the Court concludes that the defendant's constitutional rights have not been violated by allowing Mr. Brown and Dr. Winecker to testify and the Court concludes that the criminal discovery statutes in North Carolina have not been violated by allowing Mr. Brown and Dr. Winecker to testify in this case.

As a result of those findings and conclusions, the State's request to add Mr. Jarod Brown and Dr. Ruth Winecker to its witness list and then to subsequently call them as witnesses are allowed.

The Court notes the defendant's timely objection to the Court's rulings; however, the defendant's objections, while noted, are all overruled.

STATE v. BARNES

[226 N.C. App. 318 (2013)]

Defendant challenges certain findings of fact on appeal as "not supported by evidence." On appeal, the findings of fact made by the trial court in its ruling, and not challenged by the defendant, are binding upon this Court. *Biber*, 365 N.C. at 168, 712 S.E.2d at 878.

Defendant challenges the following findings of fact: that "the State did not reasonably expect to need to call the toxicologist Dr. Winecker or Mr. Brown;" that the defense experts did not contest the toxicology report even though they had "every opportunity to do so;" that "it is undisputed that [methadone toxicity] is the cause of death;" and that the "Court has given the defendant broader and more comprehensive discovery regarding the testimony of Mr. Jarod Brown and Dr. Ruth Winecker than that normally allowed by either the Constitution or by the North Carolina General Statutes." To the extent that these findings of fact are not conclusions of law, we hold that they are supported by competent evidence in the record. Even assuming arguendo that these findings of fact are not supported by competent evidence, the unchallenged findings of fact support the trial court's conclusions of law that defendant's discovery and constitutional rights were not violated.

We note that although Dr. Winecker and Brown were examined upon *voir dire*, only Brown testified before the jury. Our consideration of defendant's argument on appeal is thus limited to the testimony of Brown. During the course of Brown's testimony, the trial court gave a limiting instruction to the jury that it could only consider Brown's testimony in its evaluation of Dr. Jordan's opinion.

With respect to the alleged statutory discovery violation, we hold that the trial court did not abuse its discretion in the manner in which this issue was handled. The defendant had the toxicology report for four years, had the report reviewed by two independent experts, was afforded the opportunity to meet privately with Dr. Winecker and Brown for an hour and twenty minutes prior to the *voir dire* hearing, and was afforded a full opportunity to cross-examine both witnesses on *voir dire*. We cannot say that the trial court's decision not to exclude the testimony of Brown based upon alleged statutory discovery violations was an abuse of discretion.

Defendant further contends that the trial court's admission of Brown's testimony violated his constitutional right to effective assistance of counsel and to confront the witnesses against him.

We first note that in criminal cases, while there is no common law or constitutional right to discovery, *State v. Haselden*, 357 N.C. 1, 12,

577 S.E.2d 594, 602, *cert. denied* 540 U.S. 988, 157 L.E.2d 382 (2003), our Supreme Court has held:

> Implicit in [the constitutional rights of assistance of counsel and to confront witnesses] is the requirement that an accused have a reasonable time to investigate, prepare and present his defense. Every defendant must be allowed a reasonable time and opportunity to investigate and produce competent evidence, if he can, in defense of the crime with which he stands charged and to confront his accusers with other testimony.

*State v. Tunstall*, 334 N.C. 320, 328, 432 S.E.2d 331, 336 (1993) (internal citations omitted). The Supreme Court went on to state that the defendant bears the burden of establishing constitutional error on appeal.

> To establish a constitutional violation, a defendant must show that he did not have ample time to confer with counsel and to investigate, prepare and present his defense. To demonstrate that the time allowed was inadequate, the defendant must show how his case would have been better prepared had the continuance been granted or that he was materially prejudiced by the denial of his motion. If the defendant shows that the time allowed his counsel to prepare for trial was constitutionally inadequate, he is entitled to a new trial unless the State shows that the error was harmless beyond a reasonable doubt.

*Id.* at 329, 432 S.E.2d at 337 (internal citations omitted).

In the instant case, the trial court permitted Brown to testify, over defendant's constitutional and statutory objections, with a limiting instruction. Brown identified his report and testified that his analysis of Cardwell's blood revealed the presence of nicotine, methadone, and hydrocodone in the sample of Cardwell's blood. Brown also testified that he did not detect the presence of Xanax in the sample. Defendant contends that he was not afforded adequate time to prepare, but does not show "how his case would have been better prepared" had he been given more time or that "he was materially prejudiced" by the overruling of his objection. *See id.* Based upon the facts that defendant (1) had the toxicology report for four years prior to trial; (2) had two experts review the report; (3) was afforded an opportunity to confer with Brown prior to his testimony; and (4) was afforded an opportunity to cross-examine Brown on *voir dire* prior to cross-examining Brown before the jury, defendant cannot demonstrate constitutional error in this case. We

further hold that the facts of this case do not give rise to a presumption of ineffective assistance of counsel. *Id.* at 329, 432 S.E.2d at 336.

This argument is without merit.

### IV.  Jury Instructions on Lesser Charge of Involuntary Manslaughter

**[3]** In his third argument, defendant contends that the trial court erred in instructing the jury on the lesser offense of involuntary manslaughter. We disagree.

### A.  Standard of Review

"Assignments of error challenging the trial court's decisions regarding jury instructions are reviewed *de novo* by this Court." *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009). "An instruction on a lesser-included offense must be given only if the evidence would permit the jury rationally to find defendant guilty of the lesser offense and to acquit him of the greater." *State v. Millsaps*, 356 N.C. 556, 561, 572 S.E.2d 767, 771 (2002).

### B.  Analysis

In the instant case, the trial court charged the jury on the indicted charge of second-degree murder, the lesser offense of involuntary manslaughter, and not guilty. At the jury charge conference, defendant objected to the submission of involuntary manslaughter as a lesser offense.

Defendant argues that there was no evidence that he was culpably negligent in providing drugs to Cardwell. He further contends that "[t]he uncontradicted evidence is that the defendant intentionally sold the controlled substance to Shane Cardwell."

Defendant miscomprehends the distinction between second-degree murder and involuntary manslaughter. Our Supreme Court explained in *State v. Rich*:

> The distinction between "recklessness" indicative of murder and "recklessness" associated with manslaughter is one of degree rather than kind.
>
> . . .
>
> . . . Standing alone, culpable negligence supports the submission of involuntary manslaughter. But when that negligence is accompanied by an act which imports danger to another [and] is done so recklessly or wantonly as to manifest

depravity of mind and disregard of human life, then it is
sufficient to support a second-degree murder charge.

351 N.C. 386, 393, 395-96, 527 S.E.2d 299, 303-04 (2000) (alteration in
original) (internal citations omitted). When defendant's reckless conduct
rises to a level so as to constitute malice, then the defendant is guilty of
second-degree murder, but if it does not rise to that level, then the defend-
ant is guilty of involuntary manslaughter. In the context of involuntary
manslaughter, "[c]ulpable negligence is such recklessness or careless-
ness, proximately resulting in injury or death, as imports a thoughtless
disregard of consequences or a heedless indifference to the safety and
rights of others." *State v. Werter*, 273 N.C. 275, 280, 159 S.E.2d 883, 886
(1968) (quoting *State v. Cope*, 204 N.C. 28, 30, 167 S.E. 456, 458 (1933)).

The evidence presented at trial was that defendant sold Cardwell
some methadone and that defendant had nearly died the month before
from an overdose of methadone. There was no evidence that defendant
intended to kill Cardwell by selling him the methadone. This evidence
would support a finding by the jury of reckless conduct under either the
charge of second-degree murder or that of involuntary manslaughter.

Defendant further argues that under the provision of N.C. Gen. Stat.
§ 14-17, he could only have been convicted of second-degree murder.
The relevant portion of this statute reads:

> All other kinds of murder, including that which shall be
> proximately caused by the unlawful distribution of opium
> or any synthetic or natural salt, compound, derivative,
> or preparation of opium, or cocaine or other substance
> described in G.S. 90–90(1)d., or methamphetamine when
> the ingestion of such substance causes the death of the
> user, shall be deemed murder in the second degree, and
> any person who commits such murder shall be punished
> as a Class B2 felon.

N.C. Gen. Stat. § 14-17 (2006). We note that N.C. Gen. Stat. § 14-17 does
not relieve the State of the burden of showing malice to support a charge
of second-degree murder. *See State v. Liner*, 98 N.C. App. 600, 605, 391
S.E.2d 820, 822 (1990) (holding that the State was required to prove the
element of malice in order to support a charge of second-degree mur-
der in the context of a death resulting from the delivery of controlled
substances). The relevant portions of N.C. Gen. Stat. § 14-17 were in
effect when this Court decided *Liner*. As noted by our Supreme Court
in *Rich*, the recklessness required for second-degree murder as opposed

to involuntary manslaughter "is one of degree rather than kind." *Rich*, 351 N.C. at 393, 527 S.E.2d at 303. Such a distinction is properly left to the jury to decide. The evidence of reckless conduct in the instant case supported the submission of both the charges of second-degree murder and involuntary manslaughter to the jury.

This argument is without merit.

NO ERROR.

Judges HUNTER, Robert C. and BRYANT concur.